IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:24-cv-24253-KMW

DWAYNE WILSON, TYRONE
HARRIS, and GARY WHEELER,
individually and on behalf of those
similarly situated,

    Plaintiffs,

v.

RICKY DIXON, in his official
capacity as Secretary of the
Department of Corrections;
FRANCISCO ACOSTA, in his
official capacity as Warden of
Dade Correctional Institution; and
FLORIDA DEPARTMENT OF
CORRECTIONS, an agency of
the State of Florida,

    Defendants.

_____/

## MOTION TO DISMISS

    Defendants, SECRETARY RICKY DIXON, WARDEN FRANCISCO ACOSTA, and the FLORIDA DEPARTMENT OF CORRECTIONS, pursuant to Federal Rule of Civil Procedure 12(b), move to dismiss Plaintiffs' Class Action Complaint (ECF No. 1; "Complaint").

    Dade Correctional Institution ("Dade CI"), like most Florida prisons, is not air-conditioned. Plaintiffs bring this class action lawsuit to declare the conditions at Dade CI unconstitutional as a form of "cruel and unusual punishment" prohibited by the Eighth Amendment. The current conditions, they allege, also violate the Americans with Disabilities Act (ADA) and the Rehabilitation Act.

1

Plaintiffs' Complaint does not sufficiently allege any of the asserted claims. The Eighth Amendment claim fails because the facts do not give rise to a *substantial* risk of *serious* harm to Plaintiffs, nor demonstrate that Secretary Dixon or Warden Acosta has been *deliberately indifferent* to the conditions and risks faced by these Plaintiffs in particular. At a minimum, the alleged facts demonstrate that Secretary Dixon and Warden Acosta are responding reasonably to the risks of heat-related injuries. For similar reasons, Plaintiffs' ADA and Rehabilitation Act claims are insufficient. Even if each Plaintiff alleged a qualifying disability, their housing assignments do not discriminate against them based on any disabilities. And the accommodations Plaintiffs seek are aimed not at accommodating their disabilities but rather at improving conditions for their entire dormitories irrespective of any disabilities. Those claims and remedies are not properly alleged under the ADA or Rehabilitation Act.

Finally, as a threshold matter, Plaintiff Tyrone Harris failed to exhaust his available administrative remedies and is barred from bringing this action.

**I.     Background**

As alleged in their Complaint, Plaintiffs arrived at Dade CI between July 2022 and July 2023. Compl. ¶¶ 8–10. Plaintiff Dwayne Wilson is 66 years old and has hypertension and a large burn scar over much of his body that impairs his ability to sweat. *Id.* ¶ 8. Plaintiff Tyrone Harris is 54 years old and also has hypertension, as well as asthma that requires breathing treatments several times per week. *Id.* ¶ 9. Plaintiff Gary Wheeler is 65 years old and has chronic obstructive pulmonary disease (COPD) that requires an inhaler, as well as sleep apnea that requires a CPAP machine. *Id.* ¶ 10. Plaintiffs live in different dormitories at Dade CI, and the various dormitories have different ventilation systems. *Id.* ¶¶ 41, 74–87, 197, 226.

The heat index near Dade CI almost always reaches above 90°F and "regularly reaches" above 103°F during the summer. *Id.* ¶¶ 59–60, 62–64, 66–69. Furthermore, according to

Plaintiffs, "the average heat indexes inside Dade CI's dormitories likely *exceed* the average heat index" at nearby locations, due to "(a) the dormitories' concrete structures which absorb the sun's radiation and retain its heat; (b) additional heat added by showers, human bodies, lights, and motors; (c) increased humidity caused by showers, floods, and leaks; and (d) the lack of adequate ventilation." *Id.* ¶ 52.[1]

Plaintiffs rely on a National Weather Service (NWS) chart to indicate the likelihood of heat-related illnesses due to the heat index. *Id.* ¶ 56.[2] The chart shows the following:

| Classification | Heat Index | Effect on the body |
|---|---|---|
| Caution | 80°F - 90°F | Fatigue possible with prolonged exposure and/or physical activity |
| Extreme Caution | 90°F - 103°F | Heat stroke, heat cramps, or heat exhaustion possible with prolonged exposure and/or physical activity |
| Danger | 103°F - 124°F | Heat cramps or heat exhaustion likely, and heat stroke possible with prolonged exposure and/or physical activity |
| Extreme Danger | 125°F or higher | Heat stroke highly likely |

Overall, Plaintiffs contend that "[t]he high heat indexes and insufficient ventilation at Dade CI pose an unreasonable risk to prisoners' health" during the summer months. *Id.* ¶ 340. Among

---

[1] For purposes of this Motion, the allegations are taken as true. But Plaintiffs' speculation about the indoor heat indexes exceeding the outdoor heat indexes is suspect given Plaintiffs' acknowledgement that the Dade CI dormitories are concrete structures. Compl. ¶¶ 42, 52–53. In *Chandler v. Crosby*, the evidence revealed that the "slow thermal response" of the concrete prison kept the building "at a relatively constant temperature" that remained below the outside air temperature during the day. 379 F.3d 1278, 1285–85 (11th Cir. 2004).

[2] Plaintiffs allege that the NWS chart "predicts the risk of heat-related illness to healthy and young people, not people at an increased risk of heat-related illness due to medical conditions, medications, or age." Compl. ¶¶ 55–57. But the actual NWS website that is incorporated into the Complaint at footnote 5—https://www.weather.gov/ama/heatindex— suggests the opposite. It provides a link to a "full heat index chart," which clarifies that the effect of various heat indexes on individuals is based on "People in High Risk Groups," namely seniors, children, athletes, and outdoor workers. *See* Heat Index Chart (available at https://www.noaa.gov/sites/default/files/2022-05/heatindex_chart_rh.pdf). Because the incorporated website contradicts Plaintiffs' allegations about the meaning of the NWS chart from that very website, such allegations should not be credited. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

other relief, they seek an injunction "requiring Defendants to develop and execute a plan that remedies and abates Plaintiffs' and the class members' serious risk of harm due to the heat index and lack of ventilation." *Id.* at 62.

## II.      Motion to Dismiss Standard

Defendants move to dismiss all three counts of the Complaint pursuant to Rule 12(b)(6), due to Plaintiffs' "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. *Jones v. Bock*, 549 U.S. 199, 215, (2007). To survive a motion to dismiss, a complaint must contain sufficient factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Turner v. Williams*, 65 F.4th 564, 577 (11th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678).

Defendants also move to dismiss Plaintiff Harris's claims due to his failure to exhaust all available administrative remedies. Although motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b), such motions are appropriate "as a matter of judicial administration." *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008). Accordingly, "exhaustion should be decided on a Rule 12(b) motion to dismiss," and "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Id.* at 1375–76.

**III.    Argument**

    **A.    Plaintiff Harris Failed to Exhaust Available Administrative Remedies**

The Prison Litigation Reform Act ("PRLA"), codified at 42 U.S.C. section 1997e(a), requires prisoners who wish to challenge some aspect of prison life to exhaust all available administrative remedies before resorting to the courts. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court. *Jones*, 549 U.S. at 211. Because Plaintiff Harris has failed to exhaust all available administrative remedies, this action must be dismissed as to his claims.[3] *Chandler*, 379 F.3d at 1286.

To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures established by the prison. *Jones*, 549 U.S. at 218; *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005). In other words, "[t]he PLRA requires proper exhaustion that complies with the critical procedural rules governing the grievance process." *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015) (quotation marks omitted). Procedurally defective grievances or appeals are not adequate to exhaust administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006).

The grievance process applicable to Florida prisoners is set out in chapter 33-103 of the Florida Administrative Code. Under this process, a prisoner ordinarily "must: (1) file an informal

---

[3] The Eleventh Circuit has recognized that the PLRA provides for defendants to file a motion to dismiss and raise as a defense a prisoner's failure to exhaust administrative remedies. *Bracero v. Sec'y, Fla. Dep't of Corr.*, 748 F. App'x 200, 202 (11th Cir. 2018) (citing *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015)). In deciding a motion to dismiss for failure to exhaust, the Court proceeds in two steps: first, looking to the defendant's motion and the plaintiff's response, the Court assesses whether dismissal is proper even under the plaintiff's version of the facts; and second, if dismissal is inappropriate under the plaintiff's version of the facts, the Court makes "specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

grievance with a designated prison staff member; (2) file a formal grievance with the institution's warden; and then (3) submit an appeal to the Secretary of the FDOC." *Dimanche*, 783 F.3d at 1211; *see also* Fla. Admin. Code r. 33-103.005–007. Grievances or appeals may be returned to the inmate without further processing for numerous reasons, including if the grievance addresses more than one issue or complaint. Fla. Admin. Code r. 33-103.014(1)(a). Returned grievances may be corrected and refiled, *id.* r. 33-103.014(2), and unless a plaintiff refiles it, he has not exhausted all available administrative remedies, *Bracero*, 748 F. App'x at 203; *Coleman v. Bowden*, 797 F. App'x 422, 428–29 (11th Cir. 2019); *Arias v. Perez*, 758 F. App'x 878, 881 (11th Cir. 2019); *Gipson v. Renninger*, 750 F. App'x 948, 951–53 (11th Cir. 2018).

Plaintiff Harris's grievance was "returned without action" because it "addresse[d] more than one issue and/or complaint" in violation of chapter 33-103, Florida Administrative Code. Ex. 1 at 2; *see also* Ex. 2 at 4. Indeed, Plaintiff Harris raised multiple issues at various points in his grievance process, including poor ventilation, temperature checks, missing hot-water pipes, an inoperative sink, and a missing ice cooler for drinking water. *See* Ex. 1 at 3–4, 7–9. Despite having the opportunity to do so, Plaintiff Harris did not correct and refile his grievance. *See* Ex. 2 at 4. Accordingly, because Plaintiff Harris's grievance was procedurally defective, his claims must be dismissed for failure to exhaust all available administrative remedies. *Woodford*, 548 U.S. at 93–95; *Jones*, 549 U.S. at 211; *Chandler*, 379 F.3d at 1286.

    **B.**    **Plaintiffs Failed to Allege an Eighth Amendment Claim (Count I)**

The Constitution does not mandate comfortable prisons. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Indeed, conditions of confinement that are "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347. Only when the conditions of confinement present a risk "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk" would it violate the Eighth

6

Amendment. *Chandler*, 379 F.3d at 1289 (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*. "Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.'" *Id.* (quoting *Rhodes*, 452 U.S. at 347).

For these reasons, an Eighth Amendment claim has two requirements, an objective one and a subjective one. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). The "objective" requirement is the "denial of 'the minimal civilized measure of life's necessities,'" *id*. at 834 (quoting *Rhodes*, 452 U.S. at 347), and must be "a deprivation" that is "objectively, sufficiently serious," *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024). For a claim based on the conditions of confinement, the plaintiff must allege "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. The "subjective" requirement is based on the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id*. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Thus, a prison official must have a "sufficiently culpable state of mind." *Id*. For a claim based on the conditions of confinement, that state of mind is "deliberate indifference" to the plaintiff's health or safety. *Id*.

### i.   *Plaintiffs Failed to Allege a Substantial Risk of Serious Harm*

By itself, the lack of air conditioning does not pose a substantial risk of serious harm. *See Chandler*, 379 F.3d at 1297 (upholding conditions of confinement that are "consistent with . . . a residential setting in Florida in a building that is not air-conditioned"). The deprivation required to allege an Eighth Amendment claim must be objectively "extreme" enough to deny an inmate "the minimal civilized measure of life's necessities." *Chandler*, 379 F.3d at 1298 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)); *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S.

7

at 347). The allegations of the Complaint have not "cleared this high bar." *Chandler*, 379 F.3d at 1298.

In support of their excessive heat claim, Plaintiffs rely primarily on factual allegations about outdoor temperatures and heat indexes at nearby locations. *See, e.g.*, Compl. ¶¶ 2, 14, 21–27, 34–36, 48–51, 54, 62–69. Because the actual heat indexes within Dade CI were unrecorded during the most recent summers, Plaintiffs fall back on the nearby recordings as "the best approximation currently available." *Id.* ¶ 54.

The alleged harm from these heat indexes, however, is mostly minor. According to the NWS chart, the likely alleged injuries are heat cramps, heat exhaustion, or heat rash. *Id.* ¶¶ 56, 59, 126–32. Plaintiffs allege, "Typical symptoms include heat rash, headaches, dizziness, nausea, lightheadedness, elevated temperature, and heavy sweating." *Id.* ¶ 137. Plaintiffs argue that suffering from any of these injuries is "serious harm." *Id.* ¶ 138. But these alleged symptoms are not indicative of "serious harm," *see id.* ¶¶ 126–32; they are largely "consistent with reasonable levels of comfort and slight discomfort which are to be expected in a residential setting in Florida in a building that is not air-conditioned," *Chandler*, 379 F.3d at 1297. A plaintiff's "mere discomfort, without more, does not offend the Eighth Amendment." *Id*. at 1295.

To be sure, many of the allegations point to the *increased* risks of heat-related illnesses due to higher temperatures. *See, e.g.*, Compl. ¶¶ 56 ("the likelihood of heat-related illness increases dramatically"), 134 ("heat-related illnesses can arise and exacerbate quickly"), 145, 148–49, 154 ("increased risk"), 157, 163 ("substantially greater risk"), 182 ("more susceptible to heat-related illness"). But these allegations are not sufficient to infer a *substantial* risk of *serious* harm when the most likely heat-related symptoms seem to be medically minor. *Id.* ¶¶ 126–32.

8

Plaintiffs identify only two "permanent injuries" that could result from prolonged exposure to dangerous heat and humidity: heat stroke and death. *Id.* ¶ 125. Heat stroke can even cause death. *Id.* ¶ 133. According to Plaintiffs, however, heat stroke becomes "possible" when a person has prolonged exposure to a heat index that exceeds 103°F, and Plaintiffs concede that the heat index did not exceed 103°F except for only 2% of the 2023 summer and only 4% of the 2024 summer. *Id.* ¶¶ 56, 59, 64, 68. The *possibility* of heat stroke during a small percentage of each summer does not pose a *substantial* risk.

Not until the heat index exceeds 125°F does heat stroke become "highly likely." *Id.* ¶ 56. Yet Plaintiffs concede that the outdoor heat index did not reach 125°F except for only one day throughout two consecutive summers. *Id.* ¶¶ 62–66. One day of extreme heat index does not constitute a deprivation of "the minimal civilized measure of life's necessities," because "constitutional rights don't come and go with the weather." *Chandler*, 379 F.3d at 1289, 1298.

With respect to the risk of death, Plaintiffs rely on four deaths at Dade CI, between 2021 and 2024, of an 81-year-old inmate with a breathing impediment; a 74-year-old inmate with hypertension and breathing problems; a 72-year-old inmate with asthma, hypertension, COPD, and heart disease; and an obese inmate with hypertension and heart disease. Compl. ¶¶ 194–214. For each of these inmates, Plaintiffs speculate that "[i]t is likely that prolonged exposure" to Dade CI's heat was a contributory cause of death. *Id.* ¶¶ 204, 208, 211, 214.

But none of the Plaintiffs here are over the age of 70, and none are obese. *Id.* ¶¶ 215–41. Furthermore, each inmate who died had a different combination of medical issues than each of the Plaintiffs. *Compare id.* ¶¶ 202, 207–08, 210-11, 213–14 *with id.* ¶¶ 216–24, 227–33, 236–41. Thus, the allegations of four deaths between 2021 and 2024, in which heat may have been a

9

contributing factor, are insufficient to infer that *these* Plaintiffs are at a substantial risk of death due to the heat indexes.

### ii. Plaintiffs Failed to Allege Deliberate Indifference by Secretary Dixon and Warden Acosta

Eighth Amendment cases "mandate inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Farmer*, 511 U.S. at 838 (quoting *Wilson*, 501 U.S. at 299). The Eleventh Circuit recently clarified that the required state of mind—deliberate indifference—"denotes a state of mind marked by one's subjective awareness of a risk that results from his own conduct." *Wade v. McDade*, 106 F.4th 1251, 1261 (11th Cir. 2024). Accordingly, a plaintiff "must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Id.* at 1262. Stated differently, the defendant must "consciously disregard" a substantial risk of serious harm. *Farmer*, 511 U.S. at 839.

Some of the allegations regarding the Defendants' awareness of risks are framed as the knowledge of "FDC" as an agency. *See, e.g.*, Compl. ¶¶ 3–4, 287. Plaintiffs even refer to "FDC's deliberate indifference." *Id.* ¶ 5.[4] Although Plaintiffs also allege that Secretary Dixon and Warden Acosta are deliberately indifferent, *see id.* ¶ 339, there are no alleged facts to demonstrate their awareness of substantial risks of serious harm to these particular Plaintiffs.

At most, Plaintiffs' factual allegations demonstrate that Defendants are aware of heat-related risks to all prisoners at Dade CI. *Id.* ¶ 341. For example, Defendants are aware of the NWS heat index chart because, according to Plaintiffs, a version of the chart appears in FDC's policies and training materials. *Id.* ¶ 285. In addition, Defendants allegedly have knowledge of

---

[4] As the Supreme Court has noted, "considerable conceptual difficulty would attend any search for the subjective state of mind of a governmental entity, as distinct from that of a governmental official." *Farmer*, 511 U.S. at 841.

the conditions at Dade CI because of complaints by the guards and grievances by the inmates. *Id.* ¶¶ 113, 299. And Secretary Dixon is aware of the heat conditions in most prisons around Florida. *Id.* ¶¶ 288–95.

But there are no facts to demonstrate that either Defendant is "subjectively aware" of the risks to these Plaintiffs in particular, despite their conclusory allegation. *Id.* ¶ 343. Even though Plaintiffs' counsel wrote an email to Warden Acosta on September 6, 2023, regarding complaints about the heat and ventilation at Dade CI, and notified him that certain exhaust vents had coverings on them, the Complaint does not indicate whether the email identified any danger to the individual Plaintiffs here. *Id.* ¶ 306. Thus, Plaintiffs have failed to allege that Defendants had subjective knowledge of the particular risks that each Plaintiff faces. *See McDuf v. Bryner*, No. 20-14108-CV, 2020 WL 8265797, at *3 (S.D. Fla. Oct. 14, 2020), *report and recommendation adopted*, No. 2:20-CV-14108, 2021 WL 256375 (S.D. Fla. Jan. 26, 2021) ("[T]he Amended Complaint does not adequately explain how the identified Defendants were aware of Plaintiff's specific medical conditions or that they knew those conditions caused pain and sleep deprivation."). Some type of Plaintiff-specific "subjective knowledge" is required to the extent Plaintiffs are relying on their individual circumstances to support their claim. *See Melendez v. Sec'y, Fla. Dep't of Corr.*, No. 21-13455, 2022 WL 1124753, at *15 (11th Cir. Apr. 15, 2022) (Plaintiff, through his attorney, specifically informed Defendants of the substantial risk of serious harm he faced); *Hughey v. Sheriff of Brevard Cnty.*, No. 615CV840ORL37GJK, 2015 WL 9218790, at *3 (M.D. Fla. Dec. 17, 2015) ("Plaintiff sufficiently alleges that Defendant Lyons [sued in his official capacity] had subjective knowledge of the risk of harm, as Decedent 'told [Defendant Lyons] that he would commit suicide.'"); *Beck v. Hurwitz*, 380 F. Supp. 3d 479, 483 (M.D.N.C. 2019) ("In their official capacities, Defendants Hurwitz, Keller, and Bradley have

11

actual subjective knowledge of Ms. Beck's serious medical condition and the excessive risk posed to her . . . .").

Finally, in an official-capacity action under 42 U.S.C. section 1983, the entity's "policy or custom" must have played a part in the violation of federal law. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Plaintiffs generally allege that Defendants' "policies, practices, acts, and omissions" are responsible for the alleged Eighth Amendment violation. Compl. ¶¶ 346–47. But Plaintiffs have not identified any particular policy or custom that causes or has caused the alleged unconstitutional deprivation. *See Stevens v. Austin*, No. 4:22CV415-WS-MAF, 2024 WL 994241, at *3 (N.D. Fla. Feb. 2, 2024), *report and recommendation adopted*, No. 4:22CV415-WS/MAF, 2024 WL 989530 (N.D. Fla. Mar. 7, 2024) (no allegations that a policy or custom was involved, that a policy was followed, or that a policy or custom caused the plaintiff's injuries); *Hughey*, 2015 WL 9218790, at *3 (no allegations that the official-capacity defendant's indifference resulted from a policy or a pervasive practice or custom). Although Plaintiffs allege that "FDC has *no policy* to lower indoor temperatures or heat indexes in housing areas," Compl. ¶ 307 (emphasis added), Plaintiffs have not alleged how a current policy is causing the allegedly unconstitutional conditions.

### iii. *Secretary Dixon and Warden Acosta Are Responding Reasonably to the Risks of Heat-Related Injuries*

Moreover, a defendant who responds reasonably to a risk, even a known risk, cannot be found liable under the Eighth Amendment. *Wade*, 106 F.4th at 1255; *Farmer*, 511 U.S. at 844–45. Plaintiffs allege that Defendants failed to take reasonable steps to mitigate the risk of serious injury to the inmates at Dade CI. Compl. ¶¶ 341, 343. But even taking their allegations as true, the facts show that Secretary Dixon and Warden Acosta are responding reasonably to the heat-related risks within Dade CI and prisons throughout Florida.

12

Plaintiffs highlight the testimony Secretary Dixon provided to the Senate Appropriations Committee on Criminal and Civil Justice on October 11, 2023. *Id.* ¶¶ 1, 46, 287–95 & n.1. During that testimony, Secretary Dixon requested meaningful appropriations from the Legislature to mitigate the heat within Florida prisons. *See id.* at 1 n.1 (citing https://www.flsenate.gov/media/VideoPlayer?EventID=1_zc8d1g0v-202310111100&Redirect=true (28:40–34:40, 50:50–52:45, 55:47–58:50)). Indeed, the whole purpose of his presentation was for FDC to receive more money for heat mitigation. In conclusion, Senator Bradley complimented Secretary Dixon: "You have done yeoman's work with what you have, and I appreciate it."

Plaintiffs also highlight the fact that FDC "enlisted" KPMG to develop a 20-year master plan to improve the air quality of its institutions, which was published in December 2023. *Id.* ¶¶ 98–99. That final plan by KPMG made numerous recommendations for heat mitigation and ventilation improvement. *Id.* ¶¶ 296–98.

As it stands currently, FDC prioritizes air-conditioned housing units for the elderly and the infirm. *Id.* ¶ 287. FDC also transmits information on "heat awareness" to its prison wardens. *Id.* ¶ 301.

Regarding Dade CI in particular, prison officials have placed educational posters throughout the staffing area warning about the dangers of excessive heat and informing staff of the signs of heat-related illness. *Id.* ¶ 300. Warden Acosta even directed his staff during the summer of 2023 to provide cool water in the dorms and to contact the duty warden if an exhaust fan/system stops working. *Id.* ¶ 302. Officers sometimes bring coolers full of ice in the summer, too. *Id.* ¶ 115. And Plaintiffs acknowledge that the prison has repaired exhaust fans. *Id.* ¶ 203.

Furthermore, inmates who feel dehydrated or may pass out are typically allowed to go to the Infirmary, enjoy the air conditioning, and drink cool water. *Id.* ¶ 270. According to Plaintiffs, inmates are "routinely treated in the Infirmary for heat rash, heat exhaustion, and other heat-related illnesses." *Id.* ¶ 315. Plaintiff Harris is brought to the medical unit whenever he has breathing difficulties to receive a breathing treatment. *Id.* ¶ 230. The same is true for inmate J.G.B. *Id.* ¶¶ 198–99. And on August 6, 2024, after he fainted, Plaintiff Wilson was brought to the medical unit, hooked up to an IV, and given water to drink. *Id.* ¶ 222.

Collectively, these alleged facts demonstrate that Secretary Dixon and Warden Acosta are not indifferent, let alone *deliberately* indifferent, to the heat-related conditions at Dade CI. Even with no appropriations yet for the construction of a new prison or new HVAC system, Defendants have implemented numerous "alternative means" and "interim measures" to reduce the risks of serious injury due to the heat. *Cf. Hale v. Tallapoosa County*, 50 F.3d 1579, 1584 (11th Cir. 1995) (noting that a factfinder could consider efforts made toward the construction of a new jail, as well as "alternative means" or "interim measures" within an official's means for reducing the risks).

Accordingly, Plaintiffs have failed to allege an Eighth Amendment violation.

### C.     Plaintiffs Failed to Allege an ADA or Rehabilitation Act Claim

In Counts II and III, Plaintiffs allege that FDC discriminated against them by reason of their disability and failed to accommodate their disabilities. These counts must be dismissed because they fail to state a claim cognizable under Title II or the Rehabilitation Act.[5]

---

[5] Claims brought under the ADA and the Rehabilitation Act are evaluated under the same standards. *Sutton v. Lader*, 185 F.3d 1203, 1207–08 n.5 (11th Cir. 1999). Accordingly, the arguments presented *infra* apply to both Counts II and III.

### *i.    Plaintiffs Failed to State a Prima Facie Discrimination Claim*

To state a prima facie discrimination claim, a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability. *Bircoll v. Miami–Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007). Counts II and III fail to satisfy any of these elements.

*First*, Plaintiffs fail to allege that they are qualified individuals with a disability. A person is disabled if he has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include "the operation of a major bodily function." *Id.* § 12102(2)(B). Such functions include "the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.*

Plaintiffs allege that they suffer from various physical maladies that place them at an "increased risk of heat-related illness, injury, or death." Compl. ¶ 149. These conditions, Plaintiffs allege, "impair the body's ability to cool itself" and are "exacerbate[d]" by "extreme heat." *Id.* Although the specific, individual conditions Plaintiffs allege may qualify as disabilities in other contexts, at bottom, Plaintiffs' allegations here amount to general claims that their bodies struggle to maintain a normal body temperature. However, thermal regulation is not listed among the major bodily functions covered by statute. *See* 42 U.S.C. § 12102(2).[6] No court has held that thermal regulation is a major bodily function or otherwise a major life activity, nor do

---

[6] Notably, even after courts pointed out this omission in the statute, *see, e.g.*, *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009), Congress declined to include thermal regulation in its expanded definition of "disability" in the Americans with Disabilities Act Amendments Act, *see* 42 U.S.C. § 12102(2).

regulations promulgated under the ADA list thermal regulation as a major bodily function. *See* 29 C.F.R. § 1630.2(i)(1)(ii). Accordingly, Plaintiffs fail to state a claim that they suffer from a disability covered by Title II or the Rehabilitation Act.

*Second*, Plaintiffs fail to allege either that they were excluded from participation in or denied the benefits of Dade CI's services, programs, or activities or that they were otherwise discriminated against by FDC. *Bircoll*, 480 F.3d at 1083. As an initial matter, Plaintiffs identify no cognizable service, program, or activity to which they allegedly were denied access. Under a plain reading of the statute, Plaintiffs' emphasis on "safe housing and classification," Compl. ¶ 355, does not fall under any of these categories of an offered service, program, or activity. Indeed, in applying Title II to prisoners, the Supreme Court stated that "[m]odern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). There is no analogous link between such activities, programs, or services and "safe housing and classification."

At any rate, Plaintiffs fail to allege exclusion, denial, or discrimination. Under the interpretive guidance promulgated under Title II, the Department of Justice instructs that the restriction of major life activities is to be measured "in comparison to most people." 28 C.F.R. §§ 35.104 App. A at 470, 36.104 App. B at 611. But Plaintiffs allege on the face of their Complaint that the conditions caused by a lack of air conditioning and sufficient ventilation created a "substantial risk of serious harm faced by *everyone incarcerated at Dade CI*." Compl. ¶ 5 (emphasis added). If everyone—including Plaintiffs—experience the same heat and air, and thus collectively face the equivalent risk of harm, then there is no discrimination because there is no "benefit" of "safe housing and classification" enjoyed by "most people" at Dade CI.

16

Accordingly, because Plaintiffs are "not denied access to facilities or programs available to the general prisoner population," *Mazzola v. Davis*, 776 F. App'x 607, 612 (11th Cir. 2019), Plaintiffs fail to state a claim for discrimination.

*Third*, Plaintiffs fail to allege that even if they are denied access, which they are not, such discrimination is by reason of their disability. *See McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1143–44 (11th Cir. 2014) (noting that disabled persons have standing under the ADA and Rehabilitation Act "only if they are personally excluded, denied benefits, or discriminated against *on the basis of their disability*") (emphasis added). Plaintiffs do not claim that FDC intentionally discriminates against them as a result of their various ailments. The Eleventh Circuit has held that "a plaintiff may demonstrate discriminatory intent through a showing of deliberate indifference." *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012). As discussed above in the context of Count I, Plaintiffs failed to allege facts to demonstrate that Defendants act with deliberate indifference toward their ailments. Accordingly, because Plaintiffs "cannot demonstrate the requisite discriminatory intent," *id.*, they fail to state a claim for discrimination. *See also Redding v. Georgia*, 557 F. App'x 840, 844 (11th Cir. 2014) (holding that because the inmate "failed to allege" that the prison's actions were "discriminatory in any way," his claims could not survive a motion to dismiss).

> ii.  *Plaintiffs Failed to State a Claim for Failure to Accommodate*

When a plaintiff alleges a failure to accommodate, a defendant's duty to provide a reasonable accommodation is not usually triggered until the plaintiff makes a specific demand for accommodation. *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999). But nothing in the Complaint indicates that any Plaintiff requested an accommodation for his disability. That is, Plaintiffs do not claim that they asked for "particular accommodations . . . necessary to level the playing field," *McGary v. City of Portland*, 386 F.3d

1259, 1267 (9th Cir. 2004), as compared to all other inmates. Instead, they ask only that the air and ventilation be improved for everyone. An accommodation "is 'necessary' only when it allows the disabled to obtain benefits that they ordinarily could not have by reason of their disabilities, and not because of some quality that they share with the public generally." *Wisc. Community Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 754 (7th Cir. 2006). But the conditions at Dade CI are shared generally among all inmates. As one district court in this circuit put it, "the ADA requires that the public entity provide reasonable accommodations to ensure that individual is permitted access to the same benefits and services as others." *Smith v. Dunn*, No. 2:19-cv-927-ECM, 2021 WL 433189, at *6 (N.D. Ga. Feb 8, 2021). By Plaintiffs' own admission, they already have access to the same conditions as everyone else at Dade CI—however unpleasant they may be. Accordingly, because FDC's alleged duty to provide a reasonable accommodation for Plaintiffs' disabilities was never triggered by a specific demand for such accommodation, Plaintiffs fail to state a claim for failure to accommodate.

For the foregoing reasons, Defendants respectfully request an order dismissing Plaintiffs' Class Action Complaint.

Dated: December 17, 2024                    Respectfully Submitted,

*/s/ Raymond F. Treadwell*
Paul C. Huck Jr.
Florida Bar Number: 968358
Mathew D. Gutierrez
Florida Bar Number: 94014
**Lawson Huck Gonzalez, PLLC**
334 Minorca Ave
Coral Gables, FL 33134-4304
850-825-4334
paul@lawsonhuckgonzalez.com
mathew@lawsonhuckgonzalez.com

Raymond F. Treadwell
Florida Bar Number: 93834
Robert E. Minchin III
Florida Bar Number: 1033022
Vivekka Suppiah
Florida Bar Number: 1058339
**Lawson Huck Gonzalez, PLLC**
215 South Monroe Street, Suite 320
Tallahassee, FL 32301
850-825-4334
ray@lawsonhuckgonzalez.com
bob@lawsonhuckgonzalez.com
vivekka@lawsonhuckgonzalez.com
michelle@lawsonhuckgonzalez.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been filed with the CM/ECF website and served on December 17, 2024 to all counsel of record.

*/s/ Raymond F. Treadwell*
