**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 24-24253-CV-WILLIAMS**

DWAYNE WILSON, *et al.*,

     Plaintiffs,

v.

RICKY DIXON, *et al.*,

     Defendants.

_____/

**<u>ORDER</u>**

**THIS MATTER** is before the Court on Plaintiffs' Motion to Certify Class (DE 4) ("**Motion**"). The Motion is fully briefed and ripe for review.[1] In the Motion, Plaintiffs moved for class certification pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Motion (DE 4) is **GRANTED**.

**I.   BACKGROUND[2]**

Plaintiffs Dwayne Wilson ("**Mr. Wilson**"), Tyrone Harris ("**Mr. Harris**"), and Gary Wheeler ("**Mr. Wheeler**," collectively, with Mr. Wilson and Mr. Harris, "**Plaintiffs**") are currently incarcerated by the Florida Department of Corrections ("**FDC**") at Dade Correctional Institution ("**Dade CI**") in Homestead, Florida. (DE 1, "**Compl.**"). Dade CI consists of approximately fifteen buildings: a medical unit, a law library, a dining hall, a

---

[1] Defendants filed their Response in Opposition to Plaintiffs' Motion for Class Certification on December 17, 2024 (DE 22). Plaintiffs filed a Reply to Defendants' Response to Motion for Class Certification on January 17, 2025 (DE 33).

[2] At the class certification stage, the district court must accept as true the allegations contained in Plaintiffs' complaint. *See Heffner v. Blue Cross and Blue Shield of Alabama, Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006).

programming building, administrative buildings, a mental health inpatient unit, and eight dormitories. (*Id.* ¶ 40). These facilities provide Dade CI with the capacity to house 1,521 inmates and Dade CI generally operates at or near that number. (*Id.* ¶ 38). The dormitories, designated with the letters A through H, and dining hall are concrete buildings where those incarcerated spend most of their time. (*Id.* ¶ 104). Because Dade CI lacks trees, the concrete dormitories and dining hall absorb and retain heat from the sun throughout the day. (*Id.* ¶ 44). The dormitories lack insulation and do not have air conditioning. (*Id.* ¶¶ 42–43).

Ambient temperature and relative humidity are measured using a metric called the heat index. (*Id.* ¶ 17). The heat index is a more accurate indicator of the impact of heat on the human body—compared to temperature alone—as high humidity decreases the body's ability to cool itself through sweating. (*Id.* ¶¶ 18, 16). Notably, heat index measurements are taken in a shaded area, not in direct sunlight. (*Id.* ¶ 19). Exposure to a heat index above eighty-eight degrees poses a danger to human life and is particularly dangerous for the elderly and those with medical conditions such as heart disease, high blood pressure, asthma, and diabetes. (*Id.* ¶ 20). Although some Florida legislators have urged FDC to record temperatures within FDC dormitories, no such record has been made. (*Id.* ¶¶ 45–46). Temperature *is*, however, routinely recorded at Homestead Air Force Base, Kendall-Tamiami Executive Airport, and Miami International Airport, which are located between eight and twenty-nine miles from Dade CI. (*Id.* ¶¶ 48–49). These temperature recordings show little variation between the three locations. (*Id.* ¶ 50). In particular, the Homestead Air Force Base is only eight miles away from Dade CI, providing the closest approximation of the heat index at the facility. (*Id.* ¶ 51). However, Plaintiffs

allege that a combination of factors, including the buildings' concrete structures and inadequate ventilation systems, results in a higher heat index at Dade CI than at the Homestead Air Force Base. (*Id.* ¶¶ 52–53).

Specifically, Plaintiffs allege that the dormitory ventilation systems, which were installed decades ago, have not been properly maintained and are missing critical components like fans and motors. (*Id.* ¶ 73). The "open bay dormitories," or Dorms A through E, have windows and exhaust fans that expel air from inside the dormitory. (*Id.* ¶ 76). Plaintiffs allege that these fans constantly break down and are not repaired for extended periods of time. (*Id.* ¶ 77). Similarly, the ventilation systems in the "T-Dorms," or Dorms F through H, are missing necessary parts and the outsides of the louver vents are covered. (*Id.* ¶ 81). Accordingly, Plaintiffs allege that the primary exhaust systems in these dormitories are not functioning at all. (*Id.*).  Plaintiffs further allege that Defendants have failed to maintain the ducts. (*Id.* ¶ 84). The ducts are full of dust, dirt, and holes so air flow is reduced and any air that does go in comes out dirty. (*Id.*). The air in the T-Dorms is contaminated with smoke, mold spores, and aerosolized sewage, and the dormitories' walls and ceilings are covered with black mold. (*Id.* ¶¶ 89, 93). To alleviate the heat, prisoners attempt to build tunnels out of carboard, plastic, or whatever materials they have on hand to place over the small windows and vents to try to generate airflow. (*Id.* ¶ 109). However, these tunnels are considered contraband and are constantly confiscated. (*Id.*)

Inmates at Dade CI spend their time primarily in the dormitories and their access to the few air-conditioned facilities at the complex is strictly limited. (*Id.* ¶ 104). Inmates also spend time at the dining hall, but that building is not air-conditioned, so they are

resigned to sweating profusely while they eat. (*Id.* ¶ 108). The kitchen lacks sufficient ventilation and is swelteringly hot. (*Id.*). Interior fans in the dining hall struggle to circulate air and provide inmates with cool air. (*Id.*) These conditions are so unbearable that the officers stationed in the dining hall rush prisoners through their meals, so that the officers can return to the relief of their air-conditioned spaces. (*Id.*).

Even the night brings limited relief to the inmates at Dade CI: sleeping is difficult due to the high heat and lack of ventilation so many people sleep on the concrete floor as that is somewhat cooler than their beds. (*Id.* ¶ 107). Air conditioning at night is categorically prohibited, except for those in the infirmary or mental health inpatient unit. (*Id.*).

The American Society of Heating, Refrigerating and Air-Conditioning Engineers ("***ASHRAE***") develops national standards for indoor air quality and related HVAC systems. (*Id.* ¶ 96.) Per ASHRAE guidelines, the indoor air in a prison should not exceed seventy-seven degrees or fifty percent relative humidity. (*Id.* ¶ 102.) In October 2022, FDC contracted with consulting firm KPMG to develop a 20-year master plan for the department. (*Id.* ¶ 98.) The KPMG report (the "***Report***") was published in December 2023 and assessed FDC prisons according to ASHRAE standards. (*Id.* ¶¶ 98–99.) The Report concluded that most FDC dormitories, including those at Dade CI, require retrofitting to comply with current ventilation standards, and that over one-third of FDC facilities were assessed to be in 'critical' or 'poor' condition. (*Id.* ¶¶ 99–100.)

1.  *Plaintiffs' Individual Experiences at Dade CI*

Mr. Wilson is 66 years old and suffers from hypertension and an enlarged prostate. (*Id.*). Due to a prior burn injury, Mr. Wilson is unable to sweat normally. (*Id.*). Due to his conditions and the medications he takes for them, Mr. Wilson urinates frequently and is at a higher risk of dehydration. (*Id.* ¶¶ 216–217). Heat makes Mr. Wilson feel drowsy and dizzy and, in August 2024, he fainted in his dormitory. (*Id.* ¶¶ 221–22).

Mr. Harris is 54 years old and has hypertension and asthma. (*Id.* ¶ 9). He takes medication for his hypertension and receives treatment for his asthma several times a week. (*Id.*) His medication increases his risk of suffering heat-related illness: his blood pressure medication specifically instruct him to stay out of the heat. (*Id.* ¶¶ 227–28). Mr. Harris works in the kitchen, where there is no air conditioning and insufficient ventilation. (*Id.* ¶ 232). Mr. Harris often gets heat cramps, feels lightheaded, and suffers from a bad heat rash. (*Id.* ¶ 231).

Mr. Wheeler is 65 years old and suffers from chronic obstructive pulmonary disease and sleep apnea. (*Id.*). Accordingly, Mr. Wheeler must regularly use an inhaler and CPAP machine. (*Id.*) Mr. Wheeler's condition is worsened by the heat and lack of ventilation at Dade CI. (*Id.* ¶ 236). He sweats all day and night, and has heat rashes on his hands, arms, private areas, waistline, and chest. (*Id.* ¶ 237). Mr. Wheeler is at a high risk of heat stroke and death, and already suffers from heat exhaustion. (*Id.* ¶¶ 240–41).

Because the heat conditions at Dade CI increase their risk of developing adverse health conditions, Plaintiffs filed this putative class action against Defendants Ricky Dixon, Francisco Acosta, and FDC (collectively, "***Defendants***"), seeking declaratory and

injunctive relief on three claims: violations of the Eighth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983 (Count I); violations of the Americans with Disabilities Act ("ADA") (Count II); and violations of the Rehabilitation Act (Count III). (Id. ¶¶ 337–76.) To this end, Plaintiffs filed a Motion for Class Certification on November 2, 2024 (DE 4). Defendants filed their Response in Opposition on December 17, 2024 (DE 22). Plaintiffs filed their Reply to the Response in Opposition on January 17, 2024 (DE 33).

## II.   LEGAL STANDARD

Rule 23 of the Federal Rules of Civil Procedure "establishes the legal roadmap courts must follow when determining whether class certification is appropriate." *Valley Drug Co. v. Geneva Pharm. Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003). A party seeking class certification bears the burden of establishing the propriety of such certification. *See id.* at 1187. For class certification to be considered appropriate, the plaintiffs must do three things: 1) show that the proposed class is adequately defined and clearly ascertainable, 2) show that the class meets the requirements of Rule 23(a), and 3) show that the class satisfies one of the three requirements listed in Rule 23(b). *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302 (11th Cir. 2012).

First, the proposed class must be clearly ascertainable. Although not expressly required by Rule 23, the ascertainability of a class is an implied prerequisite to class certification. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23.") The Eleventh Circuit traditionally "collapse[s] class definition and ascertainability into one inquiry." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). "A class is

inadequately defined if it is defined through vague or subjective criteria." *Id.* By contrast, a class is adequately defined and "clearly ascertainable" if its "membership is capable of being determined." *Id.* at 1303 (internal quotation marks omitted).

Next, under Rule 23(a), "a class representative may sue on behalf of its members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Carriuolo v. General Motors Co.*, 823 F.3d 977 (11th Cir. 2016) (citing Fed. R. Civ. P. 23(a)). Rule 23 "does not merely set forth a pleading standard." *Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301, 309 (S.D. Fla. 2017). Instead, Rule 23 compels the party seeking class certification to demonstrate that "there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original). A district court "must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Vega v. T–Mobile U.S.A. Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009). In conducting this analysis, the Court "can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug*, 350 F.3d at 1188, n.15.

Finally, the party seeking class certification "must establish that the proposed class satisfies at least one of three requirements listed in Rule 23(b)." *Carriuolo*, 823 F.3d at 984. Here, Plaintiffs seek certification under Rule 23(b)(2), which requires them to demonstrate that "the party opposing the class has acted or refused to act on grounds

that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Wal-Mart*, 564 U.S. at 345.

Class certification may not be granted if the plaintiffs fail to establish any one of the Rule 23(a) factors and satisfy at least one of the Rule 23(b) requirements. *See Valley Drug*, 350 F.3d at 1188. Ultimately, "a class action determination is left to the sound discretion of the district court." *Jaffree v. Wallace*, 705 F.2d 1526 (11th Cir. 1983).

## III.   DISCUSSION

As a threshold matter, prior to certifying a class, "the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000). "[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to the claim." *Id.* at 1280 (citation omitted). However, Defendants have not challenged Plaintiffs' standing to bring this action. Therefore, because Plaintiffs are currently incarcerated and subject to the heat conditions underlying the class action claims, the Court finds that the class representatives have the requisite standing to raise the class claims at issue in this matter. The Court now considers whether the instant matter meets the statutory and legal requirements for a class action.

### A.  Class Definition and Ascertainability

A prerequisite of class certification is an adequately defined and clearly ascertainable class. *See Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). "An identifiable class exists if its members can be ascertained by reference to objective criteria. The analysis of the objective criteria also should be administratively feasible. Administrative feasibility means that identifying class members is a manageable

process that does not require much, if any, individual inquiry." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 787-88 (11th Cir. 2014) (internal citations and quotations omitted).

Here, Plaintiffs define the class as "all current and future prisoners" at Dade Correctional Institution, with two subclasses: a Heat Sensitive Subclass and a Disability Subclass. (DE 4 at 1–2). Plaintiffs define the Heat Sensitive Subclass as members of the general class who have a physiological condition that places them at an increased risk of heat-related complications, are prescribed certain medications, or are over the age of 65. (*Id.* at 2). The Disability Subclass is defined as members of the general class with a significant disability that places them at increased risk of heat-related complications. (*Id.*). Thus, the proposed class is ascertainable by objective criteria and little to no individual inquiry is required to identify class members. Additionally, Defendants have not challenged the proposed class's ascertainability.

The proposed class definition here is similar to those approved in other cases. *See, e.g.*, *Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004) (class action alleging Eighth Amendment violation because of high temperatures in cells where the district court certified a class consisting of all persons currently or may in the future be assigned to the housing unit of the Union Correctional Institution); *Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017) (certifying general class of current and future inmates at Texas prison with two subclasses: a Heat Sensitive Subclass for inmates who either: (1) have a physiological condition that places them at increased risk of heat-related illness, injury, or death (including, but not limited to, suffering from obesity, diabetes, hypertension, cardiovascular disease, psychiatric conditions, cirrhosis of the liver, chronic obstructive

pulmonary disease, cystic fibrosis, asthma, sweat gland dysfunction, and thyroid dysfunction); or, (2) are prescribed an anticonvulsant, anticholinergic, antipsychotic, antihistamine, antidepressant, beta blocker, or diuretic; or (3) are over age 65; and a Disability Subclass for inmates who suffer from a disability that substantially limits one or more of their major life activities and who are at increased risk of heat-related illness, injury, or death due to their disability or any medical treatment necessary to treat their disability.)  In light of the foregoing, and because Defendants have not challenged the proposed class definitions, this Court finds that Plaintiffs' proposed class is well-defined and ascertainable.

### B.  Rule 23(a) Requirements

#### 1.  Numerosity.

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement imposes a "generally low hurdle," and a party seeking class certification is not required to show the precise number of members in the class. *Vega*, 564 F.3d at 1267. The "general rule of thumb in the Eleventh Circuit is that 'less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

Plaintiffs have provided unrebutted evidence that Dade CI has the capacity to incarcerate 1,521 people and that the compound generally operates at or near that

number. (Compl. ¶ 38).[3] Accordingly, the Court finds that this evidence satisfies the numerosity requirement.

      *2. Commonality*.

      "The commonality requirement demands only that there be 'questions of law or fact common to the class.'" *Vega*, 564 F.3d at 1268 (quoting Fed. R. Civ. P. 23(a)). There is no requirement "that all the questions of law and fact raised by the dispute be common." *Id.* (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986)). Instead, the "relatively light burden" imposed by Rule 23(a)(2) requires the class action to "involve issues that are susceptible to class-wide proof." *Id.* at 1268, 1270 (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). A single common question suffices for establishing commonality. *Wal-Mart*, 564 U.S. at 369. At a minimum, commonality requires the class members to suffer the same injury. *Id.* at 349–50. However, commonality is not established if plaintiffs merely allege that they "have all suffered a violation of the same provision of law" because the same law may be violated in different ways. *Wal-Mart*, 564 U.S. at 350; *Perry*, 675 F.3d at 840 ("Further, the members of a proposed class do not establish that their claims can productively be litigated at once,

---

[3] In their response, Defendants do not challenge that the proposed class satisfies the numerosity requirement of Rule 23(a). Instead, Defendants argue that "the numerosity requirement alone demands an attempt to discover the number of individuals in each proposed subclass through the examination of medical records or databases." (DE 22 at 4). This argument, however, was extended in support of the Defendants' request that the Court delays its ruling on the class certification—not as an attempt to question whether the class meets the numerosity requirement. As noted *supra*, however, Plaintiffs are not required to show the precise number of members in the proposed class. Moreover, the Court has essentially met Defendants' request for a postponed ruling on class certification; almost a year has passed since Plaintiffs filed their Motion. Although the Parties recently requested additional time for expert discovery (DE 61), they have had ample opportunity otherwise to engage in discovery during this period. Accordingly, the Court will not consider Defendants' arguments for an additional postponement.

merely by alleging a violation of the same legal provision by the same defendant."
(quotation marks omitted)). Finally, the "commonality element is generally satisfied when
a plaintiff alleges that '[defendants have engaged in a standardized course of conduct
that affects all class members." *In re Checking Account Overdraft Litig.,* 275 F.R.D. 666,
671-72 (S.D. Fla. 2011) (internal citations omitted).

Here, Plaintiffs allege that all of the proposed class members are subjected to the
same oppressive conditions at Dade CI. By failing to maintain the ventilation systems and
enforcing climate control policies that create unbearable heat conditions, Defendants
have forced the class members to live in an environment that significantly increases their
risk of developing health issues. Defendants' policies of restricting access to air-
conditioned rooms and other mitigation measures apply generally to each class member.

Defendants counter that the class members are not confined under the same
conditions. (DE 22 at 6). The dormitories at Dade CI are structured differently, have
different configurations and sleeping arrangements, and use different ventilation systems.
(*Id.*). Some dormitories have windows in the cells while others only have "metal slabs with
little holes for minimal air flow." (*Id.* at 7). Defendants further point to the dissimilarities
between the class members' ages and health conditions as evidence that the proposed
class lacks commonality. Defendants assert, for example, that an inmate with
hypertension faces a different health risk relative to an inmate with a respiratory disease.
(*Id.* at 12). But the fact that the inmates may have different symptoms or health risks does
not defeat commonality because Plaintiffs are not claiming that every class member will
suffer the same adverse consequence from exposure to extreme heat indexes; they are
simply claiming that each class member faces an increased risk of adverse health

consequences. Courts have routinely upheld commonality even in the face of some variation among the individual class members. *See, e.g.*, *Hoffer v. Jones*, 323 F.R.D. 694, 697 (N.D. Fla. 2017) (differing symptoms did not defeat commonality); *Jones v. De Santis*, No. 4:19CV300-RH/MJF, 2020 WL 5646124, at *4 (N.D. Fla. Apr. 7, 2020) ("Commonality requires common questions with common answers and is not defeated just because a case also presents individual issues."); *Moreno-Espinosa v. J&J Ag. Products, Inc.*, 247 F.R.D. 686 (S.D. Fla. 2007) ("Although there appear to be some factual variations in the specific variations in the specific claims of the individual class members, the underlying issues in this matter are common to all. The existence of these factual variations does not cause the overarching common issues to 'break[] down into an unmanageable variety of individual legal and factual issues.'") In this case, Plaintiffs have alleged that the class as a whole faces substantial risk of adverse health consequences from exposure to extreme heat. To the extent that some groups face a particularly high risk of developing such health issues, Plaintiffs have assigned them to the proposed subclasses. The underlying common question of the harm brought about by Defendants' climate control and maintenance policies, however, is sufficient to carry the "relatively light burden" of commonality.

Finally, Defendants argue that Plaintiffs' focus on a heat index of 88 degrees renders the complaint "legally incapable of establishing an Eighth Amendment violation at all." (*Id.* at 9). In support, Defendants point to *Chandler v. Crosby*, 379 F.3d 1278, 1297 (11th Cir. 2004), where the Eleventh Circuit affirmed summary judgment in a case involving conditions of confinement with exposure to temperatures that exceeded 88 degrees. Defendants fail to mention, however, that—notwithstanding the ultimate merits

of their Eighth Amendment claim—the class in *Chandler* was certified. *Id.* at 1283. Moreover, while *Chandler* includes precursory consideration of the heat index measurement solely by reference to other cases, the focus of that case is on the cell *temperatures* in the Union Correctional Institution. *Id.* at 1282. Defendants posit that the inmates in *Chandler* were exposed to peak temperatures at or above 90 degrees Fahrenheit, with a 70 a percent humidity, which would yield a heat index of 105 degrees. (DE 22 at 9). Accordingly, Defendants argue that Eleventh Circuit implicitly endorsed such heat conditions as compliant with the Eighth Amendment. (*Id.*)

First, the Court notes that the district court in *Chandler* observed that *"[w]hen the ventilation system is running per design*, the relative humidity in the building rarely rises above seventy percent[.]" *Chandler*, 379 F.3d at 1285 (emphasis added). There were no findings as to the actual humidity levels at Union Correctional Institution and, accordingly, this Court cannot speculate as to what the heat index may or may not have been. Moreover, the heat index at Union Correctional Institution was not considered by the Eleventh Circuit in its analysis and this Court will not substitute Defendants' speculation— more than twenty years later—to create unsubstantiated standards regarding high heat indexes in prisons. Assuming, arguendo, that Defendants' assertion is correct, and Plaintiffs fail to establish an Eighth Amendment violation, the "question of class certification is a procedural one distinct from the merits of the action." *Groover v. Michelin North America, Inc.*, 187 F.R.D. 662 (M.D. Ala. 1999). Accordingly, at the class certification stage, the merits of Plaintiffs' Eighth Amendment claim do not govern the

Court's analysis.[4] Therefore, because Plaintiffs allege that Defendants' climate control and maintenance policies created extreme heat conditions at Dade CI that increases the proposed class's risk of adverse health consequences, the Court finds that commonality is satisfied.

### 3. *Typicality*.

To satisfy Rule 23's typicality requirement, a class representative must possess the same interest and suffer the same injury as the class members. *Murray*, 244 F.3d at 811. "The focus of typicality is whether the class representative's interest is aligned enough with the proposed class members to stand in their shoes for purposes of the litigation and bind them in a judgment on the merits." *Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671, 677 (S.D. Fla. 2007). The named representative's claims "need not be identical" to the class members' claims to satisfy typicality but there must be a "sufficient

---

[4] The Eleventh Circuit has held that a "trial court should not determine the merits of the plaintiffs' claim at the class certification stage. . .[but it] can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug*, 350 F.3d at 1188 n. 15. There is "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *see also Moreno-Espinosa*, 247 F.R.D. at 691 ("[I]n the context of a class-certification motion, the court tests the allegations in the complaint to determine not whether, if true, they state a cause of action entitling the class members to relief, but whether the requirements of Rule 23 are met.").

Instead, Rule 23 requires a party seeking class certification to affirmatively prove that "there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350. It does not, however, require the party to prove the merits of its claims at this early stage of litigation. Moreover, to the extent that there are any doubts about the impact of merits on class certification, such doubts must be resolved in favor of certification. *Diakos v. HSS Systems, LLC*, 137 F. Supp. 3d 1300, 1307 (S.D. Fla. 2015). Accordingly, because Plaintiffs' Eighth Amendment claim does not affect the proposed class's ascertainability, numerosity, commonality, typicality, or adequacy, the purported deficiencies of the claim are irrelevant to the purely procedural step of class certification.

nexus . . . between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (internal quotations omitted).  "This nexus exists 'if the claims or defenses of the class and the class representative arises from the same event or pattern or practice and are based on the same legal theory.'" *Id.* (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).

Defendants argue that the injuries and claims of the class representatives are not the same as the other class members. (DE 22 at 17). For example, unlike some members of the general class, Plaintiffs suffer from various medical issues: Mr. Wilson has hypertension and an enlarged prostate; Mr. Harris has hypertension, depression, anxiety, and asthma. Moreover, while Plaintiffs allege that they are members of the Heat-Sensitive and Disability Subclasses, they do not share all of the factual variations reflected by either subclass. To this end, Defendants highlight that none of the Plaintiffs have obesity, diabetes, cystic fibrosis, or thyroid dysfunction. (*Id.*). Accordingly, because Plaintiffs' medical risks and mitigation options may differ from other members of the general class and subclasses, Defendants claim that typicality is not present.

Substantial factual differences between the class representative and members, however, are not preclusive of typicality so long as there is a "strong similarity of legal theories." *Carter v. City of Montgomery*, 108 F.4th 1334, 1341 (11th Cir. 2024). As discussed *supra*, all of the inmates at Dade CI face the same risk of adverse health consequences stemming from Defendants' climate control and maintenance policies. That the named Plaintiffs may have medical conditions that exacerbate their particular risks is not enough to preclude typicality. *See, e.g.*, *Kornberg v. Carnival Cruise Lines,*

*Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("That plaintiffs may have suffered greater damage than other passengers because of the severity of the problem with their toilet does not render them atypical."); *Ault*, 692 F.3d at 1216 ("While each class member may have a stronger or weaker claim depending upon his or her degree of reliance, we conclude that this alone does not make class representatives' claims atypical of the class as a whole.") Accordingly, because the class representatives' claims arise out of the same FDC policies underlying the claims of the class as a whole, this Court finds that Rule 23(a)(3)'s typicality requirement is satisfied.

> ### 4. *Adequacy*.

Finally, under Rule 23(a)(4), the representative party in a class action and their counsel "must adequately protect the interests of those he purports to represent." *Valley Drug*, 350 F.3d at 1189 (quoting *Phillips v. Klassen*, 502 F.2d 362, 365 (D.C. Cir. 1974)). The Court undertakes two separate inquiries to determine the adequacy of the class representative: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

First, Plaintiffs assert that there are no major conflicts between the class representatives and the proposed class as all members of the class share a common goal:  ending Defendants' practice of subjecting inmates to extreme heat conditions at Dade CI. Moreover, on the present record, there is no basis for the Court to consider the class representatives as lacking "the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987).

Next, Plaintiffs are represented by attorneys from Florida Justice Institute who are experienced in prosecuting class action lawsuits involving federal civil rights claims for incarcerated people. *See, e.g.*, *Demler v. Inch*, No. 4:19CV94-RH-GRJ, 2020 WL 8182121 (N.D. Fla. Dec. 10, 2020) (class of FDC prisoners whose personal property had been wrongfully taken); *Copeland v. Jones*, No. 4:15-CV-00452-RH/CAS (N.D. Fla. 2015) at D.E. 78 (preliminarily appointing FJI as class counsel for class of FDC prisoners with untreated hernias). Accordingly, this Court finds that counsel is well equipped to adequately prosecute the instant matter.

Defendants have not challenged the adequacy of either the class representatives or their counsel. In light of the foregoing, and because Defendants concede the point, the Court holds that the adequacy requirement under Rule 23(a)(4) is satisfied.

### C. Rule 23(b)(2) Requirements

In addition to satisfying the requirements of Rule 23(a), a party seeking class certification must also establish that the proposed class satisfies one of the three requirements of Rule 23(b). *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Plaintiffs seek certification under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal–Mart*, 564 U.S. at 360, (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132

(2009)). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.*

Class certification is appropriate here because "[a]ll inmates, regardless of age or health, are subject to the *same* policy on climate control." *Yates*, 868 F.3d at 368. Notwithstanding minor differences between the various dormitories, Plaintiffs allege, and Defendants do not dispute, that the inmates at Dade CI must abide by FDC's climate control, maintenance decisions, and mitigation options. Defendants counter by arguing that "[t]he wide variety of inmates and accompanying risks does not fit a one-size-fits-all solution." (DE 22 at 19). To this end, Defendants argue that "unhealthy or elderly class members may require an injunction with more climate control measures to remove any alleged violation." *Id.* Alternatively, "the healthy class members may only require an injunction with minimal mitigation measures." *Id.* According to Defendants, this renders Rule 23(b)(2) inapplicable since a "single injunction or declaratory judgment" would not provide class-wide relief. This assertion is unconvincing.

The remedy in this case is not constrained to providing injunctive relief that prescribes specific heat mitigation options for specific inmates. Certainly, class certification under Rule 23(b)(2) does not require identical relief across the class. *Braggs*, 317 F.R.D. at 668 ("Rule 23(b)(2). . .does not require that the class-wide relief benefit each class member in precisely the same way."); *Wal-Mart*, 564 U.S. at 365 ("[T]he validity of a (b)(2) class depends on whether 'final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a *whole*.") (emphasis added). Here, relief that addresses FDC's climate control policies would necessarily elevate the standard of care for all inmates. Accordingly, a single injunction requiring FDC to improve

the extreme heat conditions at Dade CI would be sufficient to address the claims of the class as a whole.

Defendants further argue that certification under 23(b)(2) is inappropriate because the scope of any injunctive relief in this case is controlled by the Prison Litigation Reform Act ("**PLRA**"). (DE 22 at 19). Defendants explain that the PLRA "limits the scope of prospective relief that courts may grant in cases challenging prison conditions." *Rowe v. Jones*, 483 F.3d 791, 794–95 (11th Cir. 2007). The PLRA mandates courts to provide narrow relief that extends no further than necessary to correct the violation of the Federal right. *Id.* To this end, the PLRA "requires particularized findings that each requirement imposed by the . . . injunction satisfies each of the need-narrowness-intrusiveness criteria." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1278 (11th Cir. 2020). This, according to Defendants, is a fatal blow to class certification under Rule 23(b)(2) because it would be impossible to frame an indivisible injunction for all class members while complying with the PLRA's limitations. (DE 22 at 20).

The PLRA, however, only addresses the *type* of relief that courts may award in prison litigation and, therefore, does not affect a court's consideration of a class certification motion. *See Anderson v. Garner*, 22 F. Supp. 2d 1379 (N.D. Ga. 1997) (explaining that the PLRA did not in any way affect the court's analysis at the class certification stage and that, at a later, the court may later turn to the PLRA for guidance if it decided to award injunctive relief); *Shook v. El Paso Cnty.*, 386 F.3d 963 (10th Cir. 2004) (Because the "text of the PLRA says nothing about the certification of class actions . . . the PLRA does not alter the class certification analysis under Rule 23); *Williams v. Edwards*, 87 F.3d 126, 133 (5th Cir.1996) (explaining that the PLRA is not implicated until

the court actually endeavors to fashion some prospective relief); *Yates*, 868 F.3d at 369 ("The text of [the PLRA]] plainly says nothing at all about class actions or the requirements for class certification. . . .There is therefore no basis for engrafting [the PLRA's] requirements onto Rule 23(b)(2).") Moreover, "courts have repeatedly invoked [Rule 23(b)(2)] to certify classes of inmates seeking declaratory and injunctive relief for alleged widespread Eighth Amendment violations in prison systems[.]" *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014). Accordingly, this Court will not, at the class certification stage, prematurely consider the PLRA's potential impact on the future injunctive relief that may or may not be awarded.[5] If injunctive relief is deemed appropriate in the future, the Court will then turn to the PLRA for guidance to craft a compliant injunction.

---

[5] The PLRA also requires that prisoner plaintiffs "exhaust prison grievance procedures before filing suit." *Jones v. Bock*, 549 U.S. 199, 202 (2007) (citing 42 U.S.C. § 1997e(a)). The Eleventh Circuit has held that "a class of prisoner-plaintiffs certified under Rule 23(b)(2) satisfies the PLRA's administrative exhaustion requirement through "vicarious exhaustion," i.e., when "one or more class members ha[s] exhausted his administrative remedies with respect to each claim raised by the class." *Chandler*, 379 F.3d at 1287 (quoting *Jones 'El v. Berge*, 172 F. Supp. 2d 1128, 1133 (W.D. Wis. 2001). "[A] different rule, e.g. one requiring all class members to exhaust their administrative remedies, 'could impose an intolerable burden upon the inmate complaint review system.'" *Id.* (internal quotations omitted). In Florida, a prisoner must: (1) first, file an informal grievance with a designated prison staff member; (2) then file a formal grievance with the institution's warden; and finally (3) submit an appeal to the Secretary of FDC. *Dimanche v. Brown*, 783 F.3d 1204, 1211 (11th Cir. 2015). Here, it is undisputed that Mr. Harris filed grievances in accordance with this three-step process. First, Mr. Harris filed three separate grievances (one related to poor ventilation, one related to excess heat, and one requesting FDC officials to measure the heat in the dorm with a thermometer). FDC responded to these grievances by denying one and returning the other two with no action. Mr. Harris then proceeded through the remaining two steps with the single grievance that was denied. Defendants denied Mr. Harris' grievance and then Mr. Harris submitted a final appeal to the Secretary. This appeal was returned with no action. Similarly, Mr. Turner filed grievances at all three levels. Mr. Turner's grievance was denied at the first two levels on the merits and then returned without action at the third level. Accordingly, even though the PLRA does not instruct this Court's certification of the proposed class, the Court notes that the class representatives have satisfied the PLRA's exhaustion requirement through vicarious exhaustion.

Accordingly, because Defendants' climate control policies affect the entirety of the inmate population at Dade CI and because injunctive relief would provide relief to the whole class, the Court finds that certification under Rule 23(b)(2) is appropriate.

## IV.   CONCLUSION

For the reasons set forth above, it is **ORDERED AND ADJUDGED** as follows:

1.  Plaintiffs' claims against Defendants are certified as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

2.  The following class is hereby certified: all current or future prisoners who are or will be incarcerated at Dade Correctional Institution. The Court further certifies a Heat Subclass consisting of members of the general class who either: 1) have a physiological condition that places them at increased risk of heat-related illness, injury, or death (including, but not limited to, obesity, diabetes, hypertension, cardiovascular disease, psychiatric conditions, chronic obstructive pulmonary disease, cystic fibrosis, asthma, sweat gland dysfunction, and thyroid dysfunction); or 2) are prescribed an anticonvulsant, anticholinergic, antipsychotic, antihistamine, antidepressant, beta blocker, or diuretic; or 3) are over age 65. Finally, the Court certifies a Disability Subclass consisting of members of the general class who have a disability that substantially limits one or more of their major life activities and who are at increased risk of heat-related illness, injury, or death due to their disability or any medical treatment necessary to treat their disability.

3.  Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, Dante P. Trevisani, Ray Taseff, and Andrew Udelsman, and the Florida Justice Institute are hereby appointed as class counsel.

4.  Plaintiffs Dwayne Wilson, Tyrone Harris, and Gary Wheeler are approved as class representatives.

**DONE AND ORDERED** in chambers in Miami, Florida on this <u>26th</u> day of September, 2025.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE