**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 24-24253-CV-WILLIAMS**

DWAYNE K. WILSON, *et al.*,

      Plaintiffs,

v.

SECRETARY RICKY DIXON, *et al.*,

      Defendants.

_____/

## ORDER

**THIS MATTER** is before the Court on Plaintiffs' Motion to Strike Defendants' Expert Report of Frederic Schoenberg ("***Motion***") (DE 128). The Motion is fully briefed and ripe for review.[1] For the reasons set forth below, the Motion (DE 128) is **GRANTED**.

### I.    BACKGROUND

Plaintiffs Dwayne Wilson, Tyrone Harris, and Gary Wheeler (collectively, "***Plaintiffs***") are currently incarcerated by the Florida Department of Corrections ("***FDC***") at Dade Correctional Institution ("***Dade CI***") in Homestead, Florida. Plaintiffs filed this putative class action against Defendants Ricky Dixon, Francisco Acosta, and FDC (collectively, "***Defendants***"), alleging that the conditions at Dade CI are excessively hot. (DE 1).

To assess the conditions at Dade CI, the Parties "agreed to install 31 sensors throughout the prison to record temperature and humidity from May 23 through October

---

[1] Defendants filed a Response in Opposition (DE 134) and Plaintiffs filed a Reply in Support (DE 140).

3, 2025." (DE 128 at 1). These sensors produced data that both Parties analyzed in their respective expert reports. (*Id.* at 2).

On October 26, 2025, the Parties exchanged affirmative expert reports: Plaintiffs disclosed three reports while Defendants disclosed eight. Plaintiffs' reports included the report of Dr. Stefano Schiavon (the "***Schiavon Report***"), which "contains a detailed analysis of the heat and humidity data recorded throughout the summer of 2025 at Dade CI." (DE 128 at 2).

Then, on December 8, 2025, the Parties exchanged rebuttal expert reports. (*Id.*). At that time, Defendants disclosed a rebuttal report authored by Dr. Frederic Schoenberg (the "***Schoenberg Report***"), a statistician "retained by Defendants' counsel to provide expert opinions relating to the statistical analysis of the Heat Index data in this case." (DE 128-1 at 1). The Schoenberg Report purportedly presents Dr. Schoenberg's statistical analysis of data derived from the sensors placed around Dade CI. The Report does not, however, explicitly rebut or otherwise reference any of Plaintiffs' opening expert reports. Nor were those reports listed among the documents reviewed by Dr. Schoenberg in preparing his report. [2] (*Id.* at 2-5). Accordingly, Plaintiffs argue that the Schoenberg Report is not truly a rebuttal report, but rather an affirmative report that was untimely disclosed and should be stricken. (DE 128 at 4; DE 140 at 1). Defendants, on the other hand, counter that the Schoenberg Report is a rebuttal report because "it analyzes the same temperature and humidity sensor data relied upon [in the Schiavon Report] to: (1)

---

[2] In their response, Defendants explain that Dr. Schoenberg reviewed the Schiavon Report but inadvertently omitted it from his list of documents reviewed. One day after Plaintiffs filed their Motion, Dr. Schoenberg submitted a supplemental declaration that clarified his review of the Schiavon Report.

counter Plaintiffs' characterizations of that data . . . and (2) assist Defendants' thermoregulation expert . . . to rebut Plaintiffs' thermoregulation expert[.]" (DE 134 at 2). The Court considers these arguments below.

## II.   LEGAL STANDARD

The decision to exclude expert testimony rests firmly within a district court's discretion. *Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1331 (11th Cir. 2014). A district court has "considerable leeway" as it determines the admissibility of expert testimony. *Ruiz v. Safeco Ins. Co. of Illinois*, No. 18-21036-CV, 2019 WL 2061093, at *2 (S.D. Fla. 2019) (citing *Cook v. Sherriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005)).

## III.   DISCUSSION

Federal Rule of Civil Procedure 26(a) permits rebuttal expert reports for the purpose of contradicting or rebutting evidence on the same subject matter identified by an initial expert report. Fed R. Civ. P. 26(a)(2)(D)(ii); *Alonzo v. Biomet, Inc.*, No. 21-CV-62232, 2023 WL 3478585, at *3 (S.D. Fla. 2023) ("Rebuttal testimony is proper if it addresses the same subject matter that the initial experts address and does not introduce new arguments."). While "same subject matter" is not defined in the Rules, "courts in this circuit as well as other courts that have addressed the term have construed it broadly." *Celestin v. City of Ocoee*, No. 6:21-CV-896-RBD-EJK, 2022 WL 2916794, at *1 (M.D. Fla. 2022) (collecting cases). Accordingly, courts must "exercise their discretion and judgment in determining if a rebuttal expert report addresses the same subject matter as the opposing party's initial expert report." *Burger King Corp. v. Berry*, No. 18-20435-CIV,

2019 WL 571483, at *2 (S.D. Fla. 2019) (quoting *Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-24687, 2018 WL 3583002, at *2 (S.D. Fla. 2018)).

To contradict or rebut evidence on the same subject matter, a rebuttal report does not need to explicitly reference the opposing party's affirmative report. *See, e.g.*, *Lebron*, 2018 WL 3583002, at *5 (rejecting arguments that expert was not a proper rebuttal expert because he did "not discuss [opening expert's] report or conclusions at all and does not address [opening expert's] examination findings[.]"); *Major v. Carnival Corp.*, No. 18-21914-CIV, 2019 WL 13488488, at *2 (S.D. Fla. 2019) ("Nonetheless, a rebuttal report need not directly cite to the opposing expert's report or even mention it to qualify as proper rebuttal."); *Romano v. John Hancock Life Ins. Co. (USA)*, No. 19-21147-CIV, 2022 WL 1447733, at *36 (S.D. Fla. 2022) (rejecting argument that rebuttal report was an impermissibly tardy initial report because, even though the rebuttal report did not directly reference the opening report, the report focused on the same subject matter and did not advance any new arguments).

Of course, simply discussing the same subject matter is insufficient for an expert report to qualify as a proper rebuttal report; the report *must* contradict or rebut the contents of an opening report. Fed R. Civ. P. 26(a)(2)(D)(ii); *Withrow v. Spears*, 967 F. Supp. 2d 982, 1002 (D. Del. 2013) (explaining that "expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports."). A rebuttal report cannot be used "to craft new opinions which should have been expressed in the initial report." *Bemesderfer v. United Parcel Serv., Inc.*, No. 6:22-CV-270-PGB-EJK, 2023 WL 7151215, at *5 (M.D. Fla. 2023). There are, however,

many ways in which a rebuttal report may contradict or rebut assertions in an affirmative report. For example, a rebuttal report may offer a "different perspective" on the analysis of a data set presented in an opening report. *Wyeth Holdings Corp. v. Sandoz, Inc.*, No. CV 09-955-RGA-CJB, 2012 WL 13341004, at *5 (D. Del. 2012); *see also Sec. & Exch. Comm'n v. McGinnis*, 2019 WL 13172408, at *6 (D. Vt. 2019) ("The two experts provide alternative perspectives of the same data. [Rebuttal expert]'s Rebuttal Report is thus properly considered rebuttal."). Even in such instances, however, the different perspective presented by the rebuttal expert is one that expressly contradicts or otherwise rebuts the conclusions presented in the affirmative report. In *Wyeth Holdings*, for example, the rebuttal expert repeatedly critiqued the opening expert's methodology and then proceeded to analyze the underlying data from a different perspective. *Wyeth Holdings Corp.*, 2012 WL 13341004, at *5.

In his Report for Plaintiffs, Dr. Schiavon states that he "analyzed data from 31 sensors that were installed throughout [Dade CI]." (DE 134-1 at 15). Dr. Schiavon explains that "[h]eat stress conditions were aggregated and summarized by location across the study period." (*Id.* at 17). For each of these locations, Dr. Schiavon "computed the median and maximum of the heat index [and] then quantified exceedance frequency at five thresholds . . . by dividing the number of samples with heat index greater than each threshold by the total number of valid samples at that location[.]" (*Id.* at 18). Dr. Schiavon concludes that "these results demonstrate pervasive and consistent heat stress across all locations, with highest levels in F, G, and H dorms." (*Id.* at 21). Dr. Schiavon also "conducted an analysis to identify and quantify continuous periods when the heat index remained above specified thresholds[.]" (*Id.* at 23). Based on that analysis, he opines that

"there are long stretches of time when the heat index exceeds the specified thresholds." (*Id.* at 24). Furthermore, Dr. Schiavon compared "indoor and outdoor heat index values for the H-2 Dayroom location over the period from May 23, 2025 to August 6, 2025 . . . [and concluded that] [t]he consistently high indoor values indicate limited cooling or ventilation and sustained heat stress risk for occupants, compared to the more variable outdoor conditions." (*Id.* at 28). The Schiavon Report concludes with the statement: "All of the data demonstrate the heat index levels are dangerously high." (*Id.* at 31-32).

As Defendants note, the Schoenberg Report starts by stating that Dr. Schoenberg was "retained by Defendants' counsel to provide expert opinions relating to the statistical analysis of the Heat Index data in this case." (DE 128-1 at 1). Defendants assert that this statement, bolstered by Dr. Schoenberg's Supplemental Declaration, establishes that the Schoenberg Report covers the same subject matter as the Schiavon Report. (DE 134 at 4). Plaintiffs appear to concede this point. (DE 140 at 1-2). Plaintiffs argue, however, that a report does not qualify as a rebuttal merely because it addresses the same subject matter as an opening report. (*Id.*). As discussed *supra*, the Court agrees.

The Schoenberg Report meticulously details the steps undertaken by Dr. Schoenberg in analyzing the sensor data and presenting, as Defendants characterize it, an "alternative statistical analysis of the underlying data" to Dr. Schiavon's methodology. (DE 134 at 6). For example, "Dr. Schoenberg divided each date of data into three-hour tranches" and then used those tranches to calculate, among other items, the minimum and maximum three-hour average temperature for each date, the minimum and maximum temperature on each date, the mean temperature on each date, and the relative humidity levels. (*Id.*). While this appears to be a distinct methodology from Dr. Schiavon's

approach, Dr. Schoenberg does not then leverage his methodology to draw any specific conclusions. Dr. Schoenberg does not, for example, opine that his methodology supports the conclusion that the heat index levels at Dade CI are not dangerously high or that there is no heat stress risk for occupants. Nor does Dr. Schoenberg critique Dr. Schiavon's methodology and present his alternative model as a superior approach for analyzing the sensor data. The Schoenberg Report appears to focus simply on presenting an alternative methodology rather than contradicting the conclusions set forth in the Schiavon Report. In their Response, Defendants claim that the Schoenberg Report "squarely qualifies as proper rebuttal testimony because . . . [it assists] Defendants' thermoregulation expert, Dr. W. Larry Kenney, among others, to rebut Plaintiffs' thermoregulation expert, Dr. Susi Vassallo's affirmative expert report." (DE 134 at 2). Defendants explain that "Dr. Schoenberg provided the *data* and Dr. Kenney provided the *opinions*." (*Id.* at 18). This argument, however, is untenable. [3] Accordingly, because the

---

[3] Defendants do not offer any caselaw that supports the proposition that an expert report qualifies as a proper rebuttal solely because it is the foundation for another expert's rebuttal report. Indeed, as discussed *supra*, a rebuttal report *must* rebut or contradict the substance of an opening report and it cannot provide affirmative facts that, in turn, serve as the basis for another rebuttal report. *See, e.g.*, *Noffsinger v. Valspar Corp.*, No. 09-CV-916, 2011 WL 9795, at *6 (N.D. Ill. 2011) ("[A] party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief.") (citing *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008)); *Nelson v. Freightliner LLC*, No. 5:01-CV-266-OC-10GRJ, 2003 WL 25781423, at *3 (M.D. Fla. 2003) (rejecting characterization of expert report as a rebuttal report because it focused on "an entirely different test that does nothing to rebut the opinion of [the affirmative expert]."); And although Dr. Kenney acknowledges that he reviewed Dr. Schoenberg's excel spreadsheets, he does not contend that the methodology is sound or otherwise typical of the sort of evidence relied upon to provide the type of expert opinion being presented in this case. *See, e.g.*, *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732-33 (10th Cir. 1993) (excluding expert opinion relying on another expert's report because witness failed to demonstrate a basis for concluding report was reliable and showed no familiarity with methods and reasons underlying the hearsay report); *In re Polypropylene Carpet Antitrust Litig.*, 93 F. Supp. 2d 1348, 1357 (N.D. Ga. 2000) ("An expert, however, may not simply

Schoenberg Report does not rebut or contradict the Schiavon Report, it does not qualify as a proper rebuttal report.

Next, the Court finds that exclusion under Rule 37 is appropriate. The Court recognizes that "[e]xcluding expert testimony is a 'drastic' sanction requiring careful consideration." *United States v. McCarthy Improvement Co.*, No. 3:14-CV-919-J-PDB, 2017 WL 443486, at *6 (M.D. Fla. 2017) (citing *Brooks v. United States*, 837 F.2d 958, 961 (11th Cir. 1988)). District courts, however, "have the discretion to exclude untimely expert reports pursuant to Fed. R. Civ. P. 37(c)(1)." *Isabella Marine Corp. v. Perih*, No. 1:21-CV-23324-JLK, 2023 WL 8309051, at *1 (S.D. Fla. 2023); *see also Perry v. Schumacher Grp. of Louisiana,* No. 2:13-CV-36-FTM-29NPM, 2020 WL 8816360, at *1 (M.D. Fla. 2020) ("If an expert report is untimely or incomplete, Federal Rule of Civil Procedure 37(c) controls."). To avoid exclusion, "[t]he party [that failed] to comply with Rule 26 bears the burden of showing that its actions were substantially justified or harmless."[4] *Nat'l Union Fire Ins. Co. of Puttsburgh v. Tyco Integrated Sec., LLC*, No. 13-CIV-80371, 2015 WL 11251736, at *3 (S.D. Fla. 2015) (internal quotations and citation omitted). Defendants do not offer any such justification. Instead, they aver that they

---

repeat or adopt the findings of another expert without attempting to assess the validity of the opinions relied upon."). This deficiency aside, as discussed *supra*, Dr. Kenney's reliance on the Schoenberg Report is insufficient to qualify the Report as a proper rebuttal.

[4] In determining whether exclusion is appropriate, Courts consider the following factors: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Torres v. First Transit, Inc.*, No. 17-CV-81162, 2018 WL 3729553, at *2 (S.D. Fla. 2018) (citation omitted).

"timely disclosed Dr. Schoenberg as a rebuttal expert . . . [and] [t]he substance of the report is proper rebuttal[.]" (DE 134 at 19). As discussed above, this argument is unavailing.

Defendants further argue that the importance of Dr. Schoenberg's testimony weighs against exclusion. Defendants explain that "Dr. Kenney's rebuttal opinions are built upon Dr. Schoenberg's data [so] the Schoenberg Rebuttal Report and his testimony is critical to refuting Plaintiffs' thermoregulation expert, Dr. Vassallo." (DE 134 at 19). Defendants further argue that Plaintiffs cannot demonstrate prejudice because: (1) they had the Schoenberg Report for nearly two months before raising any objection; (2) the Schoenberg Report addresses the same subject matter as the Schiavon Report; (3) Plaintiffs had access to the same underlying sensor data; and (4) they do not claim that the Schoenberg Report has disrupted the litigation schedule or created unanticipated costs. (*Id.* at 20-21). Plaintiffs counter that the very importance of the Schoenberg Report should be considered as a factor for exclusion and that they are prejudiced because they cannot now rebut it. (DE 140 at 7). The Court agrees. *See, e.g.*, *Quantum Cap., LLC v. Banco De Los Trabajadores*, No. 1:14-CV-23193-UU, 2015 WL 12156137, at *3 (S.D. Fla. 2015) (finding prejudice because plaintiff was "unable to proffer their own rebuttal expert" to counter testimony improperly introduced under the guise of a rebuttal report); *Gaddy v. Terex Corp.*, No. 1:14-CV-1928-WSD, 2017 WL 3276684, at *4 (N.D. Ga. 2017) (finding prejudice where a party "did not have the opportunity to issue any opinions critiquing or rebutting the revised alternative designs . . . set out in [the] rebuttal report."). If Defendant wished to have Dr. Schoenberg's analysis as the foundation for Dr. Kenney's rebuttal, they could have disclosed Dr. Schoenberg as part of their opening expert reports.

They chose not to do so and cannot now admit the Schoenberg Report under the guise of a rebuttal report. Accordingly, the Court finds that the Schoenberg Report was untimely and improperly designated as a "rebuttal" opinion. The Court therefore strikes the Schoenberg Report in accordance with Rule 37(c)(1).

## IV.   CONCLUSION

For the reasons set forth above, it is **ORDERED AND ADJUDGED** as follows: Plaintiff's Motion to Strike Defendants' Expert Report of Frederic Schoenberg (DE 128) is **GRANTED**.

**DONE AND ORDERED** in Chambers in Miami, Florida, on this 12th day of May, 2026.

_____
KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE