**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**CASE NO. 24-24253-CIV-WILLIAMS-LETT**

**DWAYNE WILSON, TYRONE HARRIS**, and **GARY WHEELER**, individually and on behalf of those similarly situated,

Plaintiffs,

v.

**RICKY DIXON**, in his official capacity as Secretary of the Department of Corrections, **FRANCISCO ACOSTA**, in his official capacity as Warden of Dade Correctional Institution, and **FLORIDA DEPARTMENT OF CORRECTIONS**, an agency of the State of Florida,

Defendants.
_______________________________________/

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S OMNIBUS ORDER DENYING MOTIONS TO EXCLUDE OR LIMIT EXPERT TESTIMONY**

Plaintiffs, Dwayne Wilson, Tyrone Harris, and Gary Wheeler, on behalf of themselves and those similarly situated (collectively, "Plaintiffs"), file this Response ("Response") to Defendants Ricky Dixon, Francisco Acosta, and the Florida Department of Corrections' (collectively, "Defendants") Objections to Omnibus Order Denying Motions to Exclude or Limit Expert Testimony ("Objections") (ECF No. 333). For the reasons stated below, Defendants' Objections should be overruled/denied.

## INTRODUCTION

Magistrate Judge Lett issued the well-reasoned Omnibus Order on Defendants' *Daubert* Motions ("Order") (ECF No. 300), that deconstructed each of Defendants' arguments for excluding or limiting the expert testimonies of Dr. Susi Vassallo and Dr. Stefano Schiavon. Defendants, nonetheless, insist on relitigating every argument despite the deferential standard of review in place. In fact, Defendants even refuse to accept the proper standard of review, arguing that their arguments must be reviewed *de novo*.

As a threshold matter, the proper standard of a review as to the Magistrate Judge's ruling in the Order is clear error or contrary to law. Hoping for a fresh bite at the apple, Defendants incorrectly contend that the Order is not an order, but instead a report and recommendation. It is not. As detailed below, the Order is a non-dispositive ruling on trial evidence, and should be treated accordingly.

Turning to the merits, Defendants rehash arguments that were soundly rejected by Magistrate Judge Lett. For context, Defendants sought to exclude every opinion of each of Plaintiffs' four experts, apparently hoping that one of their many volleys against Drs. Vassallo or Schiavon will land. But not one of their attacks holds up under scrutiny.

Magistrate Judge Lett's Order conducted a *Daubert* analysis of both experts and correctly

concluded that Defendants' long list of criticisms go to weight rather than admissibility. The Order also found that both Drs. Vassallo and Schiavon are eminently qualified based on their many years of practicing, publishing, and lecturing in their respective fields. The Order further found that the methodologies that Drs. Vassallo and Schiavon employed in evaluating the excessively hot conditions at Dade CI are reliable.

Dr. Vassallo has provided expert testimony about thermal conditions inside prisons and their effects on human health numerous times before. Every district court, and the Fifth Circuit, has found her opinions not only admissible on these topics, but also worthy of weight on the merits at hearings and trial. Defendants asked this Court to break from that precedent and be the first court to find that Dr. Vassallo is somehow unqualified to give opinions she has been permitted to give before. Magistrate Judge Lett declined that invitation, and this Court should do so too.

Dr. Schiavon is a leading expert on indoor thermal conditions. Defendants sought to exclude all testimony from Dr. Schiavon without even attempting to provide sufficient legal grounds for doing so. Instead, Defendants, as revisited in their Objections, asserted peripheral arguments challenging Dr. Schiavon's opinions (although not the actual data he collected from Dade CI), each of which Magistrate Judge Lett rejected.

Based on the foregoing, and as discussed more fully in the memorandum of law below, the Court should deny/overrule Defendants' Objections and affirm the Order, because Defendants fail to identify any reason to disturb Magistrate Judge Lett's thorough *Daubert* analysis.

## LEGAL STANDARD

The Federal Magistrate Act (the "Act") states that a district court may designate a magistrate judge to hear and determine any pretrial matter except "a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit

maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A). A district court may reconsider a magistrate judge's pretrial ruling "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id*; *accord* Fed. R. Civ. P. 72(a).

As courts in this District and elsewhere have repeatedly confirmed, the clearly erroneous or contrary to law standard for reviewing a magistrate judge's order on a pretrial matter not dispositive of a party's claim or defense, is extremely deferential. *See, e.g.*, *SEC v. Charnas*, 717 F. Supp. 3d 1233, 1238 (S.D. Fla. 2024) (citing opinions from the Southern and Middle Districts of Alabama and Southern District of New York). A magistrate judge's order is only clearly erroneous if she abused her discretion, or, if after viewing the record as a whole, the district court finds with a definite and firm conviction that a mistake has been made. *Id.* at 1238. Similarly, a magistrate judge's order is only contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure. *Id.*

## <u>ARGUMENT</u>

### I. THE COURT SHOULD REJECT DEFENDANTS' INVITATION TO INAPPROPRIATELY CONDUCT A *DE NOVO* REVIEW OF MAGISTRATE JUDGE LETT'S OMNIBUS ORDER.

Defendants spend much effort in their Objections wrongly contending that the Order must be reviewed *de novo*, rather than the clearly erroneous or contrary to law standard applicable for non-dispositive orders. Defendants' Objections lack merit under either standard of review.

*Daubert* orders are not dispositive. *See, e.g., Gov't Employees Ins. Co. v. Seco*, 658 F. Supp. 3d 1162, 1166 n.1 (S.D. Fla. 2023) ("The Undersigned is issuing an Order (as opposed to a Report and Recommendations) on Defendants' *Daubert* motion because rulings on the admissibility of evidence at trial (including expert testimony) are non-dispositive matters."); *Banuchi v. City of Homestead*, 606 F. Supp. 3d 1262, 1286 n.1 (S.D. Fla. 2022) (collecting cases to find that an order,

and not a report and recommendation, was the proper vehicle for a magistrate to rule on *Daubert* motions); *Jarvis v. Carnival Corp.*, No. 1:16-cv-23727-MORENO/TURNOFF, 2017 WL 11219487, at *2 (S.D. Fla. July 27, 2017) (finding that "the weight of authority is that a magistrate judge's ruling excluding plaintiff's expert from testifying is non-dispositive") (cleaned up); *see also, e.g., Lithuanian Commerce Corp. v. Sara Lee Hosiery,* 179 F.R.D. 450, 456 (D.N.J. 1998) ("I review a magistrate judge's evidentiary determinations regarding expert testimony, even where they may ultimately affect the outcome of a claim or defense, as nondispositive orders entered pursuant to 28 U.S.C. § 636(b)(1)(A).").

Defendants' arguments for *de novo* review rely on mischaracterizations of the Act, Rule 72, and relevant case law. First, Defendants observe that the Act indicates that *de novo* review is appropriate where a magistrate rules on a motion "to dismiss or to permit maintenance of a class action." (Defs.' Objections at 3.)[1] This argument fails on its face because the Order did not dismiss or permit maintenance of a class action. Rather, the Order ruled on the admissibility of expert testimony at trial. Defendants cite no authority for the proposition that any motion that might indirectly affect a class certification motion is somehow transformed into a dispositive motion "to dismiss or to permit maintenance of a class action."

Next, Defendants rely on the Eleventh Circuit's decision in *Jordan v. Commissioner, Mississippi Department of Corrections*, 947 F.3d 1322 (11th Cir. 2020) for the proposition that whether a motion is dispositive "turns on its practical effect on the litigation." (Defs.' Objections at 3.) But *Jordan* stands for no such thing. *See Jordan*, 947 F.3d at 1327. Rather, the court there, in dealing with a motion to quash a discovery subpoena served outside of the jurisdiction of the

[1] Plaintiffs use the CM/ECF pagination throughout this Order, rather than the internal document pagination.

underlying action, found that the magistrate judge's ruling on a non-dispositive matter is subject to the clearly erroneous or contrary to law standard under the Act. *Id.* at 1327–28. Indeed, *Jordan* supports the proposition that a routine pretrial motion not specifically enumerated in the Act is non-dispositive. *Id.* at 1327.

Defendants' reliance on *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344 (11th Cir. 2008) is also misplaced. *OFS Fitel* is inapposite because it does not concern a magistrate judge's pretrial order, the Act, Rule 72, or even a *Daubert* motion, but instead involved a sanctions motion under Rule 37. *See generally id. OFS Fitel* is also not on point because the court's sanctions order was case-dispositive in that it **excluded** the plaintiff's legal expert, which exclusion prevented the plaintiff from presenting the expert testimony required to prove professional negligence—a core element of the plaintiff's claims. *Id.* at 1357. The Order, which denied Defendants' efforts to exclude expert testimony, has no such preclusive effect in this case.

Finally, the two out-of-Circuit authorities that Defendants point to do not move the needle. Like *OFS Fitel*, neither the Act nor Rule 72 is addressed in *In re Midland National Life Insurance Co. Annuity Sales Practices Litigation*, 686 F.3d 1115 (9th Cir. 2012). And *Mitchell v. Valenzuela*, 791 F.3d 1166 (9th Cir. 2015) did not involve expert witnesses at all.

Accordingly, this Court should properly review the Order under the clearly erroneous and contrary to law standard.

## II. THE MAGISTRATE JUDGE CORRECTLY HELD THAT DR. VASSALLO AND DR. SCHIAVON'S EXPERT OPINIONS ARE ADMISSIBLE.

Under any standard of review, Magistrate Judge Lett correctly found that Dr. Vassallo's and Dr. Schiavon's opinions are admissible at the upcoming trial. Both witnesses are eminently

qualified, their methodologies are sound, and their testimony will aid this Court in resolving contested issues at the bench trial.

### A. <u>The Magistrate Judge Properly Found That Dr. Vassallo's Testimony About the Risk of Prolonged Exposure to Heat Indexes Above 88°F Is Admissible.</u>

The Order contains a thorough *Daubert* analysis concluding that Dr. Vassallo is a qualified thermoregulation expert and that her opinions are based on a reliable methodology. (Order at 5–9.) None of Defendants' several attacks on this part of the Order hold water.

#### 1. Dr. Vassallo is qualified.

Defendants argue that the Order's finding that Dr. Vassallo is qualified is contrary to law for two reasons: (1) the Magistrate Judge improperly relied on other courts' assessments of her qualifications; and (2) the Judge improperly shifted the burden to Defendants to show that she is not qualified. (Defs.' Objections at 4–6.) Neither objection is accurate, let alone meritorious.

Defendants first lambast the Magistrate Judge for purportedly relying on other courts as a "substitute" for its gate-keeping role. (Defs.' Objections at 4.) This misstates the record. The Magistrate Judge spent over a page recounting Dr. Vassallo's extensive experience practicing, teaching, and writing on thermoregulation. (Order at 5–6.) Those decades of relevant experience, which are set forth in even greater detail in Dr. Vassallo's CV, are more than sufficient to demonstrate that she is qualified to testify, as the Magistrate Judge held. (*See* Order at 6 ("Dr. Vassallo's extensive experience treating heat-related illnesses qualifies her to offer these opinions").)

Tellingly, Defendants do not focus their Objections on Dr. Vassallo's qualifications themselves, but instead attack the Magistrate Judge for citing to pertinent case law in its Order.[2]

---

[2] Defendants twist the Order, claiming that under its reasoning, "once an expert is accepted anywhere, courts must accept that expert as presumptively admissible everywhere[.]" (Defs.'

The Magistrate Judge's consideration of previous cases ruling on Dr. Vassallo's opinions is proper because it was part and parcel of the court's gatekeeping role. Indeed, other courts in this District have similarly considered the admission of an expert's opinions in other cases in conducting a *Daubert* analysis. *See, e.g., Nunez v. Coloplast Corp.*, No. 19-cv-24000-SINGHAL/Louis, 2020 WL 2315077, at *3 (S.D. Fla. May 11, 2020) (referencing "lengthy, well-reasoned orders" from the same multi-district litigation in concluding that an expert was qualified). Defendants sought to exclude Dr. Vassallo's opinions that were substantially similar to her opinions that have previously passed muster. That is precisely why this Court observed that "[n]umerous courts, including the Fifth Circuit, have uniformly made the same determination" that "Dr. Vassallo's expert opinion satisfies the *Daubert* standard." *See* Order Granting Plaintiffs' Renewed Motion for Class Certification (ECF No. 334, "Class Order") at 17 n.14.)

Defendants' own authorities show that it was proper for Magistrate Judge Lett to reinforce her independent determination that Dr. Vassallo is qualified by looking to other courts' evaluations of similar challenges to her credentials. Defendants point to *Allison v. McGhan Medical Corporation*, 184 F.3d 1300 (11th Cir. 1999) for the proposition that courts should not "depend on the conclusions of other courts . . . as precedent for affirming" their own *Daubert* rulings. (Defs.' Objections at 5.) But Defendants conveniently omit the Eleventh Circuit's discussion that other courts have used evidentiary findings of other courts as precedent when reviewing essentially the same factual issues in their *Daubert* decisions, thus indicating that such practice was not impermissible. *Allison*, 184 F.3d at 1311. The court pointed out that the Ninth Circuit did just that

Objections at 5.) But the Order never applied such a "presumption," and it is Defendants' reasoning that leads to an untenable result. In Defendants' worldview, a court apparently could not cite to another court that ruled on the same issue without risking reversal for doing so—a novel result, to say the least.

in *Daubert* itself. *Id.* (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1322 n.19 (9th Cir. 1995) for the proposition that "some courts on occasion use evidentiary findings of other courts as precedent when reviewing essentially the same factual issues in their *Daubert* decisions").

Defendants' own reliance on *Daubert* is misplaced. *Daubert* does not hold that lower courts must disregard relevant precedent, as Defendants apparently urge. Rather, *Daubert* held that the lower courts erred in "exclusively" relying on scientific publications and the decisions of other courts to gauge "general acceptance" under the old *Frye* standard instead of applying the framework laid out in Rule 702. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Here, Magistrate Judge Lett did not exclusively rely on other cases, let alone apply any "presumption" of admissibility. The Order simply observed that other courts have come to the same conclusion that the Order independently did.

Moreover, Defendants' factual assertions about Dr. Vassallo's previous *Daubert* challenges in the Fifth Circuit are incorrect. It is not true that Dr. Vassallo's opinions were challenged only in a single *Daubert* challenge that is two paragraphs long.[3] As this Court already observed in its Class Order, Dr. Vassallo withstood a twelve-page *Daubert* motion aimed at excluding her testimony in *Cole v. Livingston*, 4:14-cv-01698 (S.D. Tex. Apr. 29, 2016). (*See* Class Order at 15 n.12.) Despite the Class Order, Defendants have still not set the record straight on this point by amending their Objections.

Finally, Defendants' claim that the Order improperly placed the burden of persuasion on them is inaccurate. The Order found that Plaintiffs had met their burden of showing that Dr.

---

[3] Defendants' further suggestion that other courts simply abdicated their gatekeeping role when Dr. Vassallo's qualification was not challenged, is without any factual or legal basis.

Vassallo's years of experience involving thermoregulation in prison settings qualifies her to testify. (*See* Order at 5-7.) That the Order then went on to find that Defendants had not convincingly rebutted Plaintiffs' evidence of Dr. Vassallo's qualifications is not legal error. Nowhere does the Order express, let alone apply, an erroneous legal standard.

In sum, Dr. Vassallo is well-qualified to provide opinions in this case based upon her experience on the record in this matter. The Magistrate Judge committed no error by simply citing case law supporting her own conclusion. Nor did the Magistrate Judge "invert" any burdens of proof, whether expressly or implicitly.

**2. Dr. Vassallo's methodology is reliable.**

Dr. Vassallo's opinion that risk sharply increases above the 88°F heat index threshold is based on a reliable methodology, and Defendants do not show otherwise. Defendants argue that Dr. Vassallo's methodology is unreliable because she has not sufficiently supported her position that prolonged exposure to heat indexes above 88°F leads to a substantial risk of serious harm. But the record shows that Dr. Vassallo arrived at 88°F by applying her professional judgment and experience after a thorough analysis of the relevant epidemiological literature.

As Defendants point out, Dr. Vassallo testified that the literature consistently shows a J-shaped curve with rising heat-related morbidity and mortality at about 77 degrees, with a "continuum" of even greater risk as the heat index grows higher; the higher the heat index, the greater the number of people who "die and get sick." (Defs.' Objections at 7.) Dr. Vassallo testified in her deposition that she chose 88°F in part because the results of the Petitti study showed an inflection point at which the curve begins to climb more steeply. (*See* ECF No. 165-4 at 110:7–13.) She further testified that many other studies have shown similar J-shaped curves. (ECF No. 165-4 at 110:25–112:10) (testifying that while studies do not always identify a single threshold, they are nevertheless "surprisingly uniform in the numbers and appearance where the J-shaped

curve [appears] across the world's literature" including "several articles from 2010" cited in the Petitti study itself).

Again, this Court has spoken to the issue in its Class Order, finding that Dr. Vassallo explained in depth at the class certification hearing "how she derived the eighty-eight-degree heat index threshold . . . which poses a substantial risk of serious harm to the general population." (*See* Class Order at 15.) The Court noted that Dr. Vassallo focused on two studies in particular (Petitti and Davis), to which Defendants pay scant attention. Defendants' cursory treatment of those articles fails to note what this Court already observed—that an increasing risk of hospitalization at 32 degrees Celsius (~89.6 degrees Fahrenheit) was noted in the Petitti article, and the threshold heat index above which mortality is statistically significantly elevated was noted as 30 degrees Celsius (~86 degrees Fahrenheit) was noted in the Davis article.[4] The 88 degree threshold sits right in between those two neighboring figures.

Next, Defendants argue that the mere fact that Dr. Vassallo refers to the heat index renders her methodology unreliable because the heat index measures only "what the temperature feels like" and not "an actual physiological response." (Defs.' Objections at 8.) But as this Court recently recognized, Defendants' own thermoregulation expert has published academic articles concluding that the heat index "can be used to predict heat stress compensability under minimal activity conditions resembling the activities of daily living." (*See* Class Order at 30 n.22.) That argument is also beside the point—**no** environmental measure of heat stress measures physiological

[4] As is becoming increasingly common for Defendants, they misrepresent the results of the Petitti study, pointing to the *maximum* triggers points of 100-102ºF heat index, but omitting the *mean* trigger point at ~86ºF on which Dr. Vassallo relied—i.e., the point more representative of the data. *See* Defs.' Objections at 10.

reactions; they measure thermal conditions, and experts opine on how those conditions affect the body, based on the supporting literature.

Defendants also argue that the Order improperly relies only on one of the many studies cited by Dr. Vassallo. But the Order correctly notes the "literature Dr. Vassallo relies upon uses the heat index as a measure of heat exposure and demonstrates its association with actual physiological harm, including increased mortality, making it a reliable metric for assessing the health risks posed by extreme heat." (Order at 9.) The fact that the Order discusses the details of only one example rather than picking through over a dozen studies is not clear error.

Moreover, Defendants' criticism of the Order's reliance on the Skarha study lacks merit. The Order correctly noted that the Skarha study examined Texas prisons and found that "a 1°F increase above that threshold was associated with a 0.7% increase in the risk of mortality in prisons without air conditioning." (Order at 9.) That finding directly supports Dr. Vassallo's opinion that heat risk begins below 88°F and increases as the heat index rises. Defendants argue without support that it was improper for the Order to use the Skarha study to support this point because Dr. Vassallo's declaration cited it in support of a different proposition. But courts have discretion to critically evaluate cited authorities "to determine whether the studies reliably support the conclusions reached by the Plaintiffs' experts" and are not confined to accepting experts' own interpretation of studies. *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075, 1168 (S.D. Fla. 2022); *see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279 (11th Cir. 1999) (holding that district court did not err in taking judicial notice of the entirety of an SEC filing

because courts are not required to consider only the "snippets from the documents" cited by parties).[5]

Defendants' argument that it was likewise improper for the Order to rely on peer-reviewed studies cited by the court in *Tiede v. Collier*, 796 F. Supp. 3d 275, (W.D. Tex. 2025) fails for the same reason—the record contains ample support for Dr. Vassallo's opinion to support the same conclusion. Looking to *Tiede* as persuasive authority is also appropriate for the reasons explained in Section II.A.1, *supra*. And unlike the authorities cited above, neither of the cases that Defendants cite in support of this argument even speak to whether a court may rely on decisions of other courts to resolve *Daubert* challenges, let alone conclude that courts err by looking to decisions of other courts for guidance. *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004); *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020).

**B. The Magistrate Judge Properly Found That Dr. Vassallo Is Qualified to Opine on the Exacerbation of Underlying Conditions.**

Defendants argue that the Order finds Dr. Vassallo qualified to opine only on heat illnesses like heat stroke but not "how heat aggravates underlying medical conditions." (Defs.' Objections at 11.) Not so. Defendants themselves point out that the Order finds Dr. Vassallo qualified to opine on thermoregulation, including "the effects of prolonged heat exposure on the human body." (Defs.' Objections at 12.) The Order also holds that Dr. Vassallo's "extensive experience treating heat-related illnesses qualifies her to offer these opinions regarding heat-related risks for inmates with **different medical conditions**." (Order at 6) (emphasis added). Contrary to Defendants' wishful thinking, the Order did not leave "that question open for a later date[.]" (Defs.' Objections

[5] Defendants attempt to construct a Catch-22 for the Magistrate Judge. On the one hand, Defendants criticize the Order for supposedly taking Dr. Vassallo's "word for it," while, on the other hand, criticizing the Order for accepting a "foundation the proponent did not offer." (Defs.' Objections at 7, 9.)

at 13.) The Magistrate Judge denied Defendants' *Daubert* motion in full, meaning that Dr. Vassallo can testify to the full range of her opinions. Those opinions include how heat can "exacerbate certain medical conditions." (Class Order at 13.)

In another misrepresentation of the record and case law, Defendants contend that "[n]o court has found" Dr. Vassallo's opinions admissible on the issue of whether heat exacerbates underlying diseases. (Defs.' Objections at 12.) As one court highlighted, "Plaintiffs' medical expert in toxicology, emergency room medicine, and heat medicine, Dr. Susi Vassallo ('Dr. Vassallo') testified, based on credible, published medical studies, that individuals who are 65 and older, and those with diabetes, pulmonary disease, or cardiovascular disease, are especially vulnerable to heat." *Tiede*, 796 F. Supp. 3d at 287. As Plaintiffs pointed out in their Notice of Supplemental Authority (ECF No. 280), the District Court in *Tiede* revisited these issues at trial recently, concluding again that Dr. Vassallo's opinions were credible. This includes her testimony that "underlying illnesses are exacerbated from exposure to the heat[.[]" (ECF No. 280-1 at 34 n. 213); *see also Ball v. LeBlanc,* 792 F.3d 584, 593 (5th Cir. 2015) (crediting Dr. Vassallo's testimony that people with hypertension and diabetes have difficulty controlling their body temperatures).

Defendants rely exclusively on non-binding authorities to argue that Dr. Vassallo is not qualified to offer such opinions about different medical conditions because she is board certified only in Emergency Medicine and Toxicology. (Defs.' Objections at 12.) But Dr. Vassallo is different from the experts in those other cases because she has decades of experience writing, lecturing, and testifying regarding the very opinions that Defendants challenge. (*See* ECF No. 173 at 7.)

Finally, Defendants' argument that it was improper for Dr. Vassallo to rely on her review of relevant literature flies in the face of well-settled precedent holding that this is proper. *See e.g.,*

*Burgess v. Royal Caribbean Cruises, Ltd.*, 672 F.Supp.3d 1239, 1250 (S.D. Fla. 2023) (finding that medical expert properly relied on "medical records, imaging studies, legal documents, deposition testimony, and approximately twelve (12) medical literary sources."); *Sanchez–Knutson v. Ford Motor Compan*y, 181 F. Supp. 3d 988, 992 (S.D. Fla. 2016) (rejecting argument that expert should have conducted their own testing because "[t]o the extent that expert opinions are derived from literature review, witness interviews and data analysis, they are not automatically rendered unreliable by their non-susceptibility to empirical verification.").

Defendants rely on *United States v. Paul*, 175 F.3d 906 (11th Cir. 1999) to argue otherwise, but that case is inapposite. As an initial matter, *Paul* does not contain the quote attributed to it by Defendants. Further, *Paul* merely held that a law professor was unqualified to provide an expert opinion on handwriting analysis despite his review of relevant literature, because he had "no skill, experience, training or education in the field." *Id.* at 12. Dr. Vassallo, by contrast, has decades of experience in the relevant field.

### C. The Magistrate Judge Correctly Concluded That Dr. Vassallo Is Qualified to Opine on the Role That the Heat Played in Class Members' Deaths.

Defendants contend that Dr. Vassallo is unqualified to opine on whether the heat may have contributed to class members' deaths primarily because Plaintiffs waived this argument by not addressing it in their Response to Defendants' Motion to Strike Dr. Vassallo's testimony. (Defs.' Objections at 14.) But Defendants' position mischaracterizes both the record and the law.

As an initial matter, Defendants themselves acknowledge that Plaintiffs' Response did in fact argue that "because of Dr. Vassallo's demonstrated expertise . . . it is proper for this Court to admit her opinion that the extremely hot conditions at Dade CI create a risk of heat-related illness and death." (Defs.' Objections at 14 n.4.) Also, as noted earlier, Plaintiffs' Response discussed the details of this expertise in thermoregulation at length, as well as Dr. Vassallo's thorough analysis

of the relevant literature examining heat-related morbidity and mortality. The qualifications that support Dr. Vassallo's ability to opine on heat-related mortality are the same qualifications that support her ability to opine on heat-related morbidity. Plaintiffs were not required to walk through them twice in a brief already at its page limit, or to utter magic phrases like "cause of death" or "mortality" in every sentence discussing her qualifications.

Even assuming *arguendo* Defendants' premise that such magic words are necessary, "mortality" was mentioned fourteen times in Plaintiffs' Response, and Dr. Vassallo has testified extensively about studies examining heat-related deaths. (*See* ECF No. 173.) Moreover, the Response also cited repeatedly to *Tiede*, which time and again credited Dr. Vassallo's testimony at a hearing that certain inmates' deaths were heat-related. 796 F. Supp. 3d at 295–302. As noted above, after filing the Response, Plaintiffs also filed the Notice of Supplemental Authority, noting that the same Court in the Western District of Texas has now credited the same cause-of-death testimony from Dr. Vassallo at trial. (ECF No. 280-1 at 17, 38, 41, 44, 49, 51 & 53.) Again, Defendants have avoided mention of that authority altogether.[6]

As for the merits, Defendants rely exclusively on *Clarke v. Schofield*, 632 F. Supp. 2d 1350 (M.D. Ga. 2009) to argue that Dr. Vassallo is not qualified to opine on cause of death. (Defs.' Objections at 14.) But this single, nonbinding authority is distinguishable. There, the court found that a physician with experience in family medicine was not qualified to testify "about the location of a [Deep Vein Thrombosis] without the experience of a radiologist or pathologist to assist him." *Id.* at 1357. That finding relied on the court's determination that "little if anything at all about his

[6] Defendants also ignore that the same district court concluded that, "Plaintiff's expert Dr. Susie [sic] Vassallo credibly testified that a heat index of 88 degrees or higher poses a serious risk of adverse health outcomes to any individual, including young, healthy people." (ECF No. 280-1 at 28–29.) That finding further buttresses the points in Section II.A.2.

training or medical practice . . . show that he has had experience in determining the specific location of a DVT without the assistance of other medical specialists such as a radiologist." *Id.*

Here, by contrast, Dr. Vassallo has decades of experience studying the effects of heat on morbidity and mortality that few other physicians in the world can claim. Defendants attack this experience by noting that Dr. Vassallo did not personally conduct the autopsies in question. But the irrationality of Defendants' position that Dr. Vassallo cannot testify as to cause of death because she "formed her opinions from autopsy reports prepared by others" is underscored by the fact that none of Defendants' own experts meet this standard either.

### D. <u>The Magistrate Judge Correctly Found That Dr. Schiavon's Methodology Is Reliable.</u>

Defendants object to Dr. Schiavon's opinions because: (1) they rely on Dr. Vassallo's opinion; (2) they utilize the heat index; and (3) Dr. Schiavon placed more heat and humidity sensors in some dorms than others. (Defs.' Objections at 15-21.) For the reasons explained below, none of their objections have merit.

#### 1. The Magistrate Judge properly found that Dr. Schiavon can rely on Dr. Vassallo's medical opinions.

Dr. Schiavon's reliance on Dr. Vassallo's opinions is proper and common. The Order correctly noted that an expert "cannot simply be a conduit for the opinion of an unproduced expert or simply parrot the work actually done by another expert," but found that Dr. Schiavon "does not do so." (Order at 10 (quoting *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075, 1136 (S.D. Fla. 2022).)

Defendants acknowledge that the Order applies the correct legal framework, but argue that it nevertheless should have excluded Dr. Schiavon's opinion that conditions at Dade CI are dangerous. Defendants claim that Dr. Schiavon's reference to Dr. Vassallo constitutes a "wholesale adoption of an expert opinion from another as the foundation for [his] own expert report." (Defs.'

Objections at 16.) But as the Order correctly observed, this is simply untrue. Dr. Schiavon's opinion about Dade CI's dangerous conditions "relies on his own training, experience, site observations, and analysis of the available data to form his opinions about heat exposure and indoor thermal conditions at Dade CI." (Order at 11.)

Defendants' reliance on *Lebron v. Sec'y, Fla. Dep't of Children & Families*, 772 F.3d 1352 (11th Cir. 2014) is inapposite because that case did not even involve one expert relying on another expert's opinion. Rather, it involved an expert relying on academic literature that he was unqualified to review. Even in *Lebron*, the court faulted the expert in question for basing his opinion on social science publications only because his background was "in clinical psychiatry and the treatment of drug abuse, not social science or statistics." *Id.* at 1369. The court had no occasion to decide whether it would have been proper for the expert in question to rely on a separate expert report prepared by a statistician, but Defendants' suggestion that this would be improper is belied by the many motions that they themselves have filed seeking leave for their own experts to do so. (*See e.g.*, ECF No. 216 [Defs.' Resp. in Opp'n to Pls.' Mot. to Strike the Decl. of Statistician, Dr. Frederic Schoenberg].)

Finally, Defendants object that the Order does not address their argument that Dr. Schiavon is unqualified to provide medical opinions. (Defs.' Objections at 16.) Again, not true. The Order considered their argument that Dr. Schiavon was improperly parroting Dr. Vassallo's medical opinions, but nevertheless concluded it was proper for him to "[rely] on Dr. Vassallo for the 88°F medical threshold" because he had also relied "on his own training, experience, site observations, and analysis of the available data to form his opinions." (Order at 10-11.) The Order also specifies that Dr. Schiavon may not offer opinions "outside the scope of his expertise, education, training,

and experience," contradicting Defendants' claims that the Order somehow leaves the door open for Dr. Schiavon to offer any "medical conclusion" that he is unqualified to provide. (Order at 11.)

**2. The Magistrate Judge properly found that Dr. Schiavon's use of the heat index is reliable.**

Defendants next object that Dr. Schiavon's opinions should be excluded because he employs the heat index. Again, the heat index is a reliable metric for the reasons discussed in Section II.A.2 above. The only objection unique to Dr. Schiavon that Defendants raise is that he does not typically use the heat index in his day-to-day work. Defendants argue that he should have instead used other metrics that incorporate air speed. (Defs.' Objections at 18.) But as the Order correctly pointed out, "[t]he fact that the heat index does not account for every variable affecting heat stress does not render it an unreliable measure of heat exposure, particularly where Dr. Schiavon identified those limitations and explained how they may result in the heat index understating, rather than overstating, the heat stress experienced by occupants at Dade CI." (Order at 12.)

In arguing otherwise, Defendants rely principally on *Cordoves v. Miami-Dade County*, 104 F. Supp. 3d 1350 (S.D. Fla. 2015). Once again, Defendants have selectively paraphrased their authorities so that they appear to support propositions that they do not even address, let alone support. *Cordoves* did not involve an expert substituting one methodology for a competing methodology, as Defendants imply. Rather, the court in *Cordoves* found the expert testimony at issue unreliable because the expert did not perform the due diligence that he typically would. *Id.* at 1364 (holding that an expert's opinion that security personnel were not properly trained was unreliable because he "did not review any documentation concerning training that might have been

provided to mall personnel, and in fact, never even requested such documentation," which was inconsistent with the expert's "past practice").

Here, by contrast, Defendants do not contend that Dr. Schiavon failed to support his conclusions or perform his typical due diligence. They merely argue that he should have also measured wind speed, despite Dr. Schiavon's unrebutted deposition testimony explaining that it would have been prohibitively dangerous and expensive to accurately do so, *see* ECF No.165-5 at 244:1–25, and that given the strength and positioning of the fans, it would not have made a difference to his opinion. Defendants also ignore the Magistrate Judge's observation that Dr. Schiavon explained that the heat index might even "understat[e], rather than overstat[e], the heat stress experienced by occupants at Dade CI." (Order at 12.)

Defendants are then left to quibble regarding certain articles cited by Dr. Schiavon. Defendants' main critique is that Dr. Schiavon selectively quoted from the Lu & Romps article. (Defs. Objections at 19.) But Defendants' actual distortion of the Vecellio article is far more telling. Contrary to Defendants' representations, the Vecellio article does not conclude that the heat index is only "valid[]" in the National Weather Service's "Extreme Danger" category beginning at 125°F. (Defs.' Objections at 19.) Rather, the article concludes that "categorical thresholds associated with the widely used HI [heat index] can be used to predict heat stress compensability under minimal activity conditions resembling the activities of daily living (fidgeting, self-care, showering, eating, dressing, washing dishes, etc.) in the absence of solar radiation." (*See* Class Order at 30 n.22.) Defendants might disagree about the threshold at which the heat index becomes dangerous for humans, but Defendants cannot credibly contend that the heat index is only valid at 125 degrees

Fahrenheit. And nothing about this disagreement renders the Order incorrect, let alone clearly erroneous.

**3. The Magistrate Juge properly found that Defendants' objections relating to the number of sensors in each dorm go to weight rather than admissibility.**

Defendants' critique of Dr. Schiavon's summary statistics listing "Overall" calculations is, on its face, a complaint about the proper weight given to evidence, rather than its admissibility. Defendants complain that some dorms contained more heat sensors than others, but Dr. Schiavon also reported the median heat index separately for every single sensor, thereby showing each of his calculations per dorm. These calculations are unaffected by Defendants' supposed weighting defect. Conclusions based on the type of dorm can be easily derived based on these numbers. Moreover, Dr. Schiavon's conclusions regarding the amount of time spent above each threshold are unaffected by the weighting issue, which would only apply to a calculation of a median, not a percentage of time. At bottom, Defendants essentially complain about one number in Dr. Schiavon's 92-page report.

Finally, Defendants argue that the Order's ruling on Dr. Schiavon's summary statistics is contrary to law because it made no reliability findings as to those summary statistics and improperly deferred to trial a full *Daubert* analysis essential to class certification. (Defs.' Objections at 19.) But the Order spends several pages engaging in precisely the type of "full" and "rigorous" *Daubert* analysis of Dr. Schiavon that Defendants claim is absent. Order at 9–13. Defendants are just unhappy that their criticism of Dr. Schiavon's "use of the available sensor data goes to the weight of [his] testimony rather than its admissibility." (Order at 13.)

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court overrule/deny Defendants' objections and affirm the Order in its entirety.

Respectfully submitted,

*/s/ Kenneth J. Duvall*
Adrian K. Felix, Esq.
Florida Bar No. 30846
afelix@bilzin.com
eservice@bilzin.com
Kenneth J. Duvall
Florida Bar No. 121826
kduvall@bilzin.com
Brandon Storm, Esq.
Florida Bar No. 1078359
bstorm@bilzin.com
**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Telephone: (305) 350-7234
Direct Fax: (305) 351-2195

Dante P. Trevisani, Esq.
Florida Bar No. 72912
dtrevisani@fji.law
Ray Taseff
Florida Bar No. 352500
rtaseff@fji.law
Erica A. Selig, Esq.
Florida Bar No. 0120581
Eselig@fji.law
**FLORIDA JUSTICE INSTITUTE, INC.**
40 NW 3rd Street Suite 200
Miami, Florida 33128
Phone: (305) 358-2081
Fax: (305) 358-0910

Andrew Udelsman, Esq.
Florida Bar No. 1051696
andy@udelsman.law
**UDELSMAN LAW PLLC**
PO Box 557652
Miami, Florida 33255
Phone: (786) 390-2698

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed via CM/ECF, and a copy of said document has been served via Notices of Electronic Filing generated by CM/ECF on November 2, 2026, to all counsel of record.

*/s/ Kenneth J. Duvall*
Counsel for Plaintiffs